# CHARLESTON

## BALLOUZ *v.* HIGGINS.

Submitted June 8, 1906.    Decided December 11, 1906.

1. CONTRACT — *Validity*— *Trust Relation.*
   When it is certain, from all the relations existing between con-
   tracting parties, that they do not deal on equal terms, the burden
   is upon the one who exerts the dominating influence to show that
   any contract between such parties was entered into fairly, openly
   and voluntarily, and that it was well understood. (p. 68.)

Appeal from Circuit Court, Wetzel County.

Bill by A. C. Ballouz and others against Brauman Higgins
and others. Decree for plaintiffs and Brauman Higgins and
others appeal.

*Reversed, and Contract Canceled.*

JOHN A. HOWARD and S. M. NOYES, for appellants.

SANDERS, JUDGE:

This is an appeal from and *supersedeas* to two decrees of
the circuit court of Wetzel county, entered in a cause in
which A. C. Ballouz and others were plaintiffs and Frank
Cook and others were defendants.

Brauman Higgins, being the owner of a tract of land in
Wetzel county, on March 2, 1893, entered into an agreement
with Jackson Hays, evidenced by a receipt, which recited that
Hays had paid Higgins five dollars in cash, and that upon
the payment of a certain sum additional, Hays was to receive
a conveyance for an undivided one-half of the royalty in the
oil and gas underlying said tract of land. Higgins never
conveyed the land to Hays, but in 1896 he conveyed it to
A. C. Ballouz. The appellants are the owners of the
title of Ballouz, whether by conveyance immediately from
him does not appear, but he divested himself of all title to
the property in question by deeds with covenants of general
warranty of title, and the appellants have acquired the
property.

On the 17th day of September, 1900, the appellants exe-
cuted an oil and gas lease covering the land to the South
Penn Oil Company, which Company, by virtue of the lease,

entered upon the property and drilled three oil wells from which large quantities of oil have been produced. After this property had been developed, Hays made claim against the South Penn Oil Company and also against the appellants for the undivided one-half of the oil royalty, reserved in the lease to the South Penn Oil Company, basing his claim upon the receipt given to him by Higgins. Thereupon the South Penn Oil Company and the Eureka Pipe Line Company, in whose possession the oil was, declined to account for, and deliver to, the appellants the royalty produced from said wells.

On the 12th day of November, 1901, an agreement was entered into between Frank Cook, Joseph Thomas, Falila Thomas, David Abraham, Kalila Abraham, Moses Simon, George Shine, and Ballouz, who is one of the appellees, by the terms of which Ballouz agreed to undertake, at his own cost and expense, to silence the claim of Jackson Hays, and in consideration therefor he was to receive one-fourth of the royalty oil produced from the first three producing wells on said property. He was also to receive one-half of any money which might be recovered from Higgins upon any warranties made by him in his conveyance to Ballouz. It was further provided in said agreement that in the event of being unsuccessful in his efforts to defeat the claim of Hays, Ballouz was to receive one hundred dollars for his services, and the appellants acknowledged receipt of any and all sums of money to which they might be entitled by reason of the breach of any and all covenants in the deeds executed by Ballouz in relation to the land on account of the claim of Hays.

At December rules, 1902, Ballouz, joining himself with the appellants, filed the original bill in this cause, the purpose of which was to cancel and declare null and void the receipt which was the basis of the claim of Hays. The South Penn Oil Company and the Eureka Pipe Line Company interposed formal demurrers and answers to the bill, but no demurrer or answer was filed by Jackson Hays.

On the 6th day of June, 1903, the appellants filed the amended bill in this cause. This bill adopted many of the allegations of the original bill; attacked the contract of November 12, 1901, for fraud, misrepresentation, want of con-

sideration, and failure of consideration, and prayed for a cancellation of this contract, as well as for the cancellation of the Hays' receipt.

On the 4th day of March, 1905, the circuit court entered a decree, adjudging that the contract between appellants and Ballouz was not obtained by fraud. On the first day of July, 1905, another decree was entered, nullifying the claim of Hays, and adjudging that Ballouz was entitled to three-fourths of one-thirty-second of the oil produced from the first three wells. Ballouz was not decreed the entire one-thirty-second of the oil, for the reason that the court found that Joseph Cook, attorney in fact for David and Kalila Abraham, did not have authority to execute the agreement on their behalf. Hays has not appealed from the action of the court in regard to his claim; neither does Ballouz complain that he was not allowed the entire amount of the royalty claimed by him. Hence, the only question to be determined is, whether or not the contract of November 12, 1901, was obtained by fraud, as claimed by the appellants, who are all the parties to the agreement, except Ballouz and David and Kalila Abraham.

All the parties to this controversy are natives of Syria. The appellants claim that at the time the contract was entered into, they were not able, owing to their limited knowledge of the English language, to understand it, and that they relied upon Ballouz to explain it to them, and that he pretended to do so. But they say that in all the negotiations leading up to the preparation of the contract, and in the conversations had at the time of its execution, Ballouz represented to them that the purpose for which he wanted it was to show his authority to attack and defeat the claim of Hays, and that by signing the contract in question the appellants incurred no liability whatsoever, and that in it no consideration was expressed as moving from them. It is manifest from all the facts and circumstances that the appellants reposed great confidence in the justice, integrity and sound judgment of Ballouz. He had resided in this country a greater length of time than the appellants, and was regarded as a man of probity by his people. He states in his answer that he had the confidence and respect of appellants. Under these circumstances, it is apparent that the parties

were not dealing on equal terms, and that if the contract obtained by Ballouz is claimed to be tainted with fraud, he must show by a preponderance of the testimony that it was entered into by the appellants with a thorough understanding on their part of all its provisions. "When the relation existing between contracting parties appears to be of such a character as renders it certain that they do not deal on equal terms, but that on the one side, from overmastering influence, or on the other side, from weakness, dependence, or trust justifiably reposed, unfair advantage is rendered probable, then the transaction is presumed void, and it is incumbent upon the party in whom such confidence is reposed to show affirmatively that no deception was used, and that all was fair, open, voluntary, and well understood." *Stepp* v. *Frampton*, 179 Pa. 284; Page on Contracts, section 216; Beach, Modern Equity Jurisprudence, section 114, p. 125. The burden being upon Ballouz to show that the transaction was in all respects *bona fide*, we are to consider whether or not he has established the fact that the appellants entered into the contract understandingly. The allegations of the bill as to what Ballouz stated at the time the contract was entered into are fully sustained by the evidence of the appellants. Immediately upon the discovery of what Ballouz was claiming under the contract, the appellants instituted suit to declare it null and void—a circumstance tending to sustain their contention that they did not theretofore know of such claim. That the appellants had a very limited knowledge of the English language is apparent. Joseph Cook, one of the appellants, was under the necessity, at the time of engaging counsel to represent him in this suit, to avail himself of the services of an interpreter to make intelligible to counsel the matters in controversy, and this was nearly two years after the transaction in question.

The contract in question was prepared by the attorney for Ballouz, at his request and direction. It is not testified by the notary who took the acknowledgments, nor by the attorney who prepared the contract, that the appellants understood it. These parties say that it was apparently understood by appellants; that as it was read Ballouz would explain it to them in the Syrian language, and the appellants

would indicate that they acquiesced in it.   But what Ballouz really told appellants appears only from the testimony of appellants and Ballouz, and if the contention of the appellants is correct, they might well have given their consent to the contract.   The evidence of Ballouz himself is a general denial of the allegations of the amended bill, and there is some independent testimony tending to corroborate him. This it is unnecessary to review.   It is sufficient to say that under all the facts and circumstances the evidence adduced by Ballouz to show that the contract by which he acquired such valuable property rights was procured by him fairly and honestly, falls short of its purpose, and that the evidence shows that the contract was entered into on account of fraudulent misrepresentations as to its provisions.   We have not undertaken to review the evidence in detail, because to do so will serve no good purpose.   It is only necessary to give the conclusion reached, but in doing so we have briefly referred to some of the most material facts.   Upon a consideration of the whole evidence, we are forced to the conclusion that the contract between Ballouz and · appellants must be cancelled and rescinded.

Baliouz was bound under his covenant of warranty to indemnify and save harmless the appellants in case the claim of Hays had been adjudged valid.   True, he was not required, in order to protect his warranty, to institute suit to invalidate that claim.   However, there was no reason why he should not do so, if he chose. · Hence, the contract by which Ballouz acquired the property rights of appellants cannot be considered as an engagement on his part to do anything but that which he was already bound to do.   Whether a contract to do that which a person is legally obligated to do is supported by a lawful consideration we do not here decide.   The disposition of this contract, on the ground of fraud in its procurement, renders a decision of this latter question unnecessary.

The decree of the circuit court is reversed, and the contract of November 12, 1901, is cancelled, set aside and held for naught.

#### UPON APPLICATION FOR REHEARING.

This cause was not argued by counsel for Ballouz; neither was any brief filed in his behalf.   Since the decision herein, however, a petition for rehearing has been filed.   In this pe-

tition, among other things. it is said that the opinion herein is erroneous, in that it states that the contract in question was prepared by the attorney for Ballouz, and at his request and direction. The attorney who prepared the paper, and who was offered as a witness by the appellee, states that such was the case—that he prepared the contract at the instance and request of Ballouz, who employed him to write it, and paid him for doing so.

It is also said that the appellants did not repudiate the contract as soon as they found out what Ballouz was claiming under it. Their evidence is plain that they were unable to get their royalty oil on account of Ballouz's claim—that they discovered such claim when they asked the South Penn Oil Company for division orders. There is no claim that division orders were actually made. Upon the refusal of the South Penn Oil Company to deliver the royalty to them, the appellants instituted suit to set aside Ballouz' claim. These facts are not denied, so far as we have been able to see. Ballouz was certainly claiming the royalty, and the record shows that suit was instituted soon after the discovery of oil.

While the evidence of the witnesses Harry and Modi tends to corroborate Ballouz, yet all the evidence introduced on his behalf fails to overthrow the case made by the plaintiffs in the amended bill. The testimony of Harry and Modi as to conversations had with appellants in relation to the contract in question is denied by appellants, and the testimony of witness Harry is especially unreasonable and improbable wherein he states that he was first approached and asked to undertake to silence the claim of Hays, but that he refused, and advised that the arrangement be made with Ballouz, and that he be paid therefor one-half of the royalty from the first three producing wells.

There is no reason why a rehearing should be granted. We should not do so simply to give an opportunity for argument. The appellants were afforded this privilege, but failed to take advantage of it.

*Reversed and Contract Canceled.*