## John Stepp *v.* Alvin W. Frampton, Appellant.

[Marked to be reported.]

*Contract—Fraud—Undue influence—Evidence—Burden of proof.*

When the relation existing between contracting parties appears to be of such a character as to render it certain that they do not deal on equal terms, but that on the one side, from overmastering influence, or on the other side, from weakness, dependence, or trust justifiably reposed, unfair advantage is rendered probable, then the transaction is presumed void, and it is incumbent upon the party in whom such confidence is reposed to show affirmatively that no deception was used, and that all was fair, open, voluntary and well understood.

On a bill in equity to secure the cancelation of the assignment of mortgages, it appeared that the plaintiff was a man seventy-five years of age, mentally and physically infirm. He had been an industrious farmer, and had all his life abstained from speculative operations. The defendant was a young man about thirty-five years of age and until about two years before the bill was filed had been an entire stranger to plaintiff. He ingratiated himself into such intimacy with the plaintiff that the latter consulted him in matters of the most confidential character, such as how to distribute his property among the members of his family, and made him an executor of his will, giving him large powers. The will was written by the defendant and under his advice. Subsequently plaintiff guaranteed notes on which defendant secured the money, and he gave an oil lease upon his farm to defendant. Shortly after the execution of this lease defendant assigned to plaintiff at various times interests in the lease and in other leases, and took from him an assignment of the mortgages in controversy in payment. The master and the court below found that the leases had no value; that plaintiff was mentally and physically infirm, and that the relation between him and defendant at the date of the assignment of the mortgages was of a confidential character. A decree was entered in favor of plaintiff. *Held,* that the evidence was sufficient to sustain the decree and that it should be affirmed.

Argued Oct. 26, 1896. Appeal, No. 9, Oct. T., 1896, by defendant, from decree of C. P. No. 3, Allegheny Co., Aug. T., 1893, No. 315, on bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity for the cancelation of an assignment of mortgages.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was decree in favor of plaintiff.

*M. H. Stevenson*, for appellant.—Fraud and undue influence, which latter is closely akin to fraud, must be proved by evidence clear, precise and indubitable.   Mere suspicion and distrust are not sufficient: Graham v. Pancoast, 30 Pa. 97 ; Mead v. Conroe, 113 Pa. 228; Cummins v. Hurlbutt, 92 Pa. 165; Thorne v. Warfflein, 100 Pa. 526 ; Greenfield's Est., 14 Pa. 489 ; Worrall's App., 110 Pa. 349 ; Milligan's App., 97 Pa. 533 ; Lewars v. Weaver, 121 Pa. 292 ;. Cover v. Manaway, 115 Pa. 338.

Inadequacy of consideration is merely presumptive evidence of fraud, at best: Cummings' App., 67 Pa. 404 ; Davidson v. Little, 22 Pa. 245 ; Harris v. Tyson, 24 Pa. 347 ; Blanchford v. Christian, 1 Knapp, 77 ; 1 Story, Eq. Jur. 234.

Mere persuasion is not enough.   There must be something more, something that amounts to imposition or circumvention— a species of moral restraint that takes away the free agency of a party before his deed or will can be set aside: Herster v. Herster, 122 Pa. 252; Trost v. Dingler, 118 Pa. 269.

If a vendee desire to rescind he must tender reconveyance before trial, unless title is wholly worthless: Babcock v. Case, 61 Pa. 431 ; Leaming v. Wise, 73 Pa. 173.

*Richard A. Kennedy*, with him *David Smith*, for appellee.— Beach on Modern Equity Jur., 125.

OPINION BY MR. JUSTICE DEAN, January 4, 1897:

John Stepp, plaintiff, resided at Tarentum; he had married twice, and by his first wife had a grown-up family of children, who had left home, married and were in business for themselves. By the second wife, he had two children, ten and twelve years of age, these with their mother constituting the family.   Stepp, in the spring of 1891, was about seventy-five years of age; he was the owner of a considerable estate of personalty, an improved farm in Armstrong county, a valuable hotel property in Tarentum, and the property in which he lived.   At this time, defendant made his acquaintance; he called at the house ostensibly for the purpose of selling him a cabinet organ; no sale was made, because Stepp was then the owner of one.   But

Frampton's visits did not cease and he soon got on intimate terms of friendship with the family.   The degree to which the intimacy had grown may be inferred from the fact, that Frampton who, nine months before had been a total stranger, became in January, 1892, Stepp's adviser and scrivener in so important a matter as the making of his will; besides, the testator had such confidence in him, that he appointed him one of the two executors thereof, his widow being the other; very large powers were given the executors, as well as authority to collect and . pay over large sums of money to his children, with the direction that no change should be made in the will by "any court by virtue of any adverse laws that are now in force, or that may be thereafter enacted."   The intimacy continued after this until October 17, 1892, when Frampton executed a judgment note for $300, which Stepp in writing guaranteed, and on which Frampton received from the First National Bank of Tarentum the money; this note Stepp paid to the bank.   Again, on March 16, 1893, Stepp became Frampton's surety in a judgment note for $420 on which Frampton received the money from a bank, and which Stepp also paid.   On March 29, 1893, Stepp executed to Frampton an oil and gas lease for a term of fifteen years on his farm of two hundred and fifty-two acres in Buffalo township, Armstrong county, for a consideration of one eighth of the oil, and if a paying quantity of gas struck, then $200 per annum for each well.   This lease was on a wholly undeveloped property, and was signed by Stepp and Alvin W. Frampton, the real name of defendant; there is but one subscribing witness, J. W. Frampton; defendant, in his testimony, admitted that he signed both names, and this is his explanation: "I signed J. W. Frampton for convenience if anything happened Mr. Stepp, I could testify that was his signature, and put it on record if my name was there."   Forty-one days after this lease, May 9, 1895, Frampton assigned to Stepp the one undivided half of the lease taken on his own farm, and the undivided half on ten smaller farms, the whole making eight hundred and seventy acres, for value received, no other consideration being named in the assignment.   In thirty days afterwards, on June 9, 1893, he assigned to Stepp for the consideration of $3,000 the undivided half interest in the same leases and nine additional ones, making one thousand two hun-

dred and twenty-two acres, then follow other assignments at different dates in a little more than a month, of fractional interests for the expressed considerations of $3,000 to $5,000,—with this result, that Frampton, on the undeveloped territory in this brief time, resells to Stepp fractional interests for an aggregate sum of $18,500; and if the expressed fractional interests be summed up, he has resold to Stepp more territory than exists, for he has resold him twenty-two twelfths of his own farm, seventeen twelfths of the eight hundred and seventy acres, and five twelfths of the one thousand two hundred and twenty-two acres.

The consideration for these assignments was partly paid to Frampton by Stepp, by assigning to him mortgages aggregating $12,000 on a hotel property in Tarentum. So far as we have thus narrated the facts, they are undisputed. Within fifteen days after the assignment of the mortgages, plaintiff filed this bill averring the assignment was obtained from him by false and fraudulent representations on part of Frampton, and praying it be canceled and the securities be redelivered to him. Defendant denied all the material averments of the bill and alleged that an agreement had been entered into between him and Stepp to develop the oil and gas territory, and the whole transaction was for the purpose of raising money to pay the expenses of the development. The case was referred to J. M. Stoner, Esq., as master to find facts, state his conclusions of law, and suggest decree. Much evidence was taken, some of it of a contradictory character. The master finds, however: 1. That the leaseholds of the oil and gas territory had no market value. That John Stepp was seventy-five years old, and had for two years previous been very infirm physically and mentally. 3. That the relation between Stepp and Frampton at the date of the assignment of the mortgages was of a confidential character.

His conclusion from all the testimony is, that the assignments were procured by fraud and undue influence practised by Frampton, and he therefore suggests a decree that they be canceled, and the securities redelivered to Stepp. His report was confirmed by the court below, and decree made accordingly, and now defendant appeals, assigning for error the master's findings of fact and conclusions of law.

There was abundant evidence to warrant the master in find-

ing that plaintiff at the date of the assignment was physically and mentally infirm, not alone because of advancing years, but also by reason of severe and protracted disease, and that Frampton was confided in by him. For thirty-five years he had been an industrious, thrifty farmer, and had accumulated a competence; he then retired from active business and took up his residence in Tarentum; there he had lived for seven years when Frampton made his acquaintance. His physician and near neighbors testified to his failing health and weakened mental powers at that time. The very fact that a man whose whole life had been a cautious, saving one, should, in old age, enter on a wildly speculative one, thereby periling his entire estate, at once suggests inquiry as to the cause. It is found he has become bodily and mentally infirm; then appears a new acquaintance, a young man only thirty-five years of age, who, according to his own admissions, is without means, but who to use no stronger terms, is a speculator in oil and gas territory, a projector of enterprises for development; after a few months of intimacy the old man changes the business methods of a lifetime, and enters deeply into a speculative oil project. On examining into the nature of this intimacy it is found the old man has learned to confide in the younger; has consulted him in matters of the most delicate and confidential nature, such as how he shall distribute his property among his family; further appoints him, although irresponsible financially, one of his executors; gets him to make the entries of births and deaths in the family Bible; the young man cheers and nurses him in sickness; frequently accepts his hospitality as to lodging and board; borrows money from him to pay his expenses of a political campaign when he was a candidate. Defendant admits they were close friends, and that they (Stepp and wife) consulted him as to business matters and he advised them. While we do not undertake to say it is absolutely certain a confidential relation existed between these two men, of which defendant took advantage to defraud the one who confided in him, we do say the evidence was ample to warrant such a conclusion by the master. We have no doubt, as argued by appellant, this old man's cupidity was aroused by the plausible statements of the projector and speculator, and that he expected to make millions out of the transaction; but this does not prove the bargain an honest one;

it only shows that the man, who during a long life when his mind was strong shunned such operations, now, when weakened by disease and age, and leaning on one in whom he confided, made an absurdly disastrous bargain. All frauds perpetrated on the weak and confiding are successful only because they are susceptible to influences which the ordinarily strong and self-reliant resist. A confidential relation such as the law infers always exists as between parent and child, guardian and ward, counsel and client, principal and agent, but it also exists in numerous cases where only the facts warrant the inference. Beach on Equity, 125, says : " But when the relations existing between the contracting parties appear to be of such a character as to render it certain that they do not deal on equal terms, but that on the one side . . . . from overmastering influence, or on the other side, from weakness, dependence, or trust justifiably reposed, unfair advantage in a transaction is rendered *probable*, then the burden is shifted, and the transaction is presumed void, and it is incumbent upon the party in whom such confidence is reposed . . . . to show *affirmatively* that no deception was used, and that all was *fair, open, voluntary* and *well understood*. This principle is of very general application, . . . . and the courts have always been careful not to fetter this useful jurisdiction by defining the exact limits of its exercise."

And that is the principle announced by this court in Hetrick's Appeal, 58 Pa. 477. The gross inequality of the bargain here startles the mind; when this is followed by evidence of physical and mental infirmity on part of the loser, and of a confidential relation between him and the gainer, the burden is on the latter to satisfy the chancellor that all was fair, open, voluntary and well understood. In this, as the master has found, defendant wholly failed. What we have said disposes of all appellant's assignments of error. The decree is affirmed and appeal dismissed.