## Vogan, Executor, *v.* Jordan, Appellant.

*Decedent's estate—Gifts—Inter vivos—Burden of proof.*

In an action of replevin to recover securities given by a mother to her daughter, during her lifetime, it was error to instruct the jury that the daughter occupied such a confidential relation with her

## 520    VOGAN, EXECUTOR, *v.* JORDAN, Appellant.

Syllabus—Argument.    [92 Pa. Superior Ct.

mother, that the burden of proof was on her to establish the bona
fides of the gift.

To establish such a gift two essential elements must appear: an
intention to make the gift then and there, and an actual or construc-
tive delivery at the same time, of a nature sufficient to divest the
giver of all dominion, and invest the recipient therewith. If the gift
is from a parent to a child, the action of the donor is viewed as but
natural, and less evidence is required to establish the intention. If
it appears there was a voluntary delivery without explanatory
words, and a retention of possession by the transferee, so related, it
can be assumed that there was an intention to give. As between
such parties, there is no presumption of the invalidity of the volun-
tary gift and unless there is evidence of undue influence or circum-
stances that give rise to a suspicion, the burden is not on the donee
to show the fairness of the transaction.

Argued November 16, 1927. Appeal No. 20, April
T., 1928, by defendant from judgment of C. P., Law-
rence County, March T., 1926, No. 166, in the case of
James H. Vogan, Executor of the Estate of Sarah
Jane Pizor Vogan, v. Lillian Jordan. Before PORTER,
P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP
and CUNNINGHAM, JJ. Reversed.

Replevin for negotiable papers. Before HENNINGER,
P. J., 50th Judicial District, specially presiding.

The facts are stated in the opinion of the Superior
Court.

Verdict in favor of plaintiff and judgment thereon.
Defendant appealed.

*Errors assigned* were the charge of the court, an-
swers to points and refusal to grant a new trial.

*Wylie McCaslin,* and with him *Homer C. Drake,* for
appellant.—A presumption of fairness arises by reason
of the relationship of the parties and there was no bur-
den upon the appellant to prove that the gift was valid:
28 Corpus Juris 671; Vaughn v. Vaughn, 217 Pa. 496;
Wendt's Estate, 14 Pa. Superior Ct. 644; Strang's
Estate, 68 Pa. Superior Ct. 224; Compton v. Hoffman,

265 Pa. 257; Yeakel v. McAtee, 156 Pa. 600; Northern Trust Co. v. Huber, 274 Pa. 329; Yeager's Estate, 273 Pa. 359; Simon v. Simon, 163 Pa. 292.

*James E. Marshall*, and with him *William E. Porter*, for appellee.

OPINION BY GAWTHROP, J., March 2, 1928:

Plaintiff, as executor of his mother, Sarah Jane Pizor Vogan, brought an action of replevin against his sister, Lillian Jordan, to recover two promissory notes for $500 each, and a certificate of deposit for $720 payable to the deceased, alleged to be part of the assets of the mother's estate at the time of her death (July 14, 1924), to which plaintiff had the right of possession. The statement filed averred that during the year 1924, defendant took said property and had it in her possession without any legal right to such possession and without any title to, or ownership of, it and refused to deliver it to plaintiff, although demanded so to do. The defense set up was that of a voluntary gift. On the trial it appeared that the deceased was survived by plaintiff and defendant and the children of a deceased daughter. The appraised value of her estate (including the securities in dispute) was $4,746.50. By her will dated December 12, 1920, she left $1,000 to her daughter, about $520 to the children of the deceased daughter and the remainder of her estate to her son. The deceased was about seventy-six years of age and took sick in her own home June 28, 1924. Defendant attended to her there for three days and then took her to her own home on an adjoining farm and took care of her for ten days before she was taken to a hospital where she died July 14, 1924. Plaintiff testified that during the three days she remained at home she "was lying on the cot part of the time and part of the time going about the house"; and that when he saw her from time to time at de-

fendant's house "she was in a weak physical condition ...... and from some remarks she made I thought that it showed that her mind was a little weak, ...... my opinion was her mind was some weak." Other lay witnesses testified that during her sickness the woman's mind was in a weak condition. The attending physician, called by plaintiff, testified that her mental condition was good on June 28th; that on July 1st, she had some fever and was somewhat out of her head and a pretty sick woman but she had improved on July 2nd and had improved still more on July 4th, and that he did not notice anything the matter with her mind after July 1st. Defendant's witnesses testified that they visited the deceased while she was at her daughter's home and conversed with her, and that her mental condition seemed to be normal. One witness for defendant testified that a day or two before the deceased went to the hospital she asked her how she was. She answered, "Not very good ...... I am afraid I am not going to get well." The witness asked her, "Have you your business affairs fixed up?" She said, "Yes, I have all but some papers that I have given to Lilly (defendant) and I want her to have them but she won't allow me to sign them." The witness said, "Lilly, if your mother wants to sign those papers why won't you allow her to sign them?" and that Lilly went to another room and came back with the two notes and bank certificate in question and handed them to her mother who was in bed; that the mother, who was in bed, "just swung her feet out on the floor and sat on the edge of the bed," and "asked Lilly to get her a pen, and Lilly went out and brought in—I think it was a fountain pen, and she signed the notes and bank certificate and she said to me 'I don't know whether you can read them or not, I can't see very good.' It was not written very straight. And then she handed them to her daughter;" ......

that the daughter went out of the room and got a pink
envelope and put the papers in it and sealed it and
handed it to the witness who took it home and put
it in a safe where it remained until plaintiff demanded
it about two weeks after the mother died, when the
contents of the envelope were handed over to defend-
ant.   The verdict was for plaintiff and defendant has
appealed from the judgment entered thereon.

The questions presented for our determination are:
(1) Whether the instructions of the trial judge were
erroneous, and (2) whether error was committed in
refusing to affirm points presented by defendant for
charge.   The legal principles controlling in cases in
which the issue is whether there has been a gift inter
vivos are so familiar and have been so recently set
forth by our Supreme Court (Northern Trust Co. v.
Huber, 274 Pa. 329; Yeager's Estate, 273 Pa. 359),
that only a brief statement thereof is required here.
To establish such a gift two essential elements must
appear: an intention to make the gift then and there,
and an actual or constructive delivery at the same
time, of a nature sufficient to divest the giver of all
dominion, and invest the recipient therewith.   If the
gift is from a parent to a child the action of the donor
is viewed as but natural, and less evidence is required
to establish the intention.   If it appears there was a
voluntary delivery without explanatory words, and a
retention of possession by the transferee, so related,
it can be assumed that there was an intention to give.
Ordinarily affirmative evidence of the fairness of the
voluntary transfer is not required.   As between such
parties there is no presumption of the invalidity of a
voluntary gift and, unless there is evidence of undue
influence or of circumstances that give rise to a
suspicion, the burden is not on the donee to show the
fairness of the transaction: Vaughn v. Vaughn, 217
Pa. 496.   A presumption of fairness arises by reason

of the relationship of the parties and facts establishing undue influence, or that the parties did not deal on equal terms must be shown affirmatively by those attacking the transaction.  In the case of strangers a different rule applies, and the law then casts upon the donee the burden of showing the gift was the voluntary and intelligent act of the donor: Stepp v. Frampton, 179 Pa. 284.  In Yeakel v. McAtee, 156 Pa. 600, there was a gift from a mother of eighty years, blind and helpless, to her daughter who had attended her for many years.  It was held that the gift was valid and that the burden of proving that it was the voluntary and intelligent act of the donor did not rest on the daughter.

We pass to the question whether the legal principles stated were properly applied in the instructions given to the jury by the trial judge.  The instruction, which is the subject of the first and second assignments of error, is as follows:

(1)  "The defendant was the only person there to look after her.  Defendant nursed her, gave her her medicine, waited upon her and had entire charge and control of her.  The sickness, some of the witnesses say, affected her mind.  These facts, under all the circumstances of this case, cast the burden on the defendant to prove by the weight of the evidence that when Mrs. Vogan delivered the papers to her she intended them to be a gift, and she must show by the fair weight of the evidence that the gift was fairly obtained, voluntarily made and fully understood.

(2)  When a daughter is nursing her mother under such circumstances as shown in this case, a confidential relation exists that raises a presumption of legal fraud in connection with any gift obtained while the relationship continues, and this presumption must be overcome by showing that it was fairly obtained, voluntarily made and well understood, in order to make it valid."

According to the principles and authorities above noted, the burden of proving that the gift was fairly obtained and fully understood did not rest upon defendant. The daughter did not occupy any position of trust or confidence toward her mother. There is no evidence that she was the agent of the mother in the transaction of any of her business or the management of her affairs. No fraud or undue influence is asserted. Having produced evidence of the intention to give and an actual delivery, defendant met the burden of her affirmative defense. The trial judge should have submitted to the jury the question whether under the evidence the mental and physical weakness of the mother was such at the time of the transfer of the securities as to render it certain that they did not deal on equal terms. In some cases the question whether the parties dealt on equal terms is one of law, but here we think that it was a question of fact to be established by the evidence, and that by reason of the relationship of the parties the burden of proving that they did not deal on equal terms was on plaintiff. Unless and until that fact was established defendant did not have the burden of proving that the gift was fairly obtained or fully understood by her mother, but could rest on the presumption of fairness arising from the relationship. McConville v. Ingham, 268 Pa. 507, is readily distinguishable from this case upon its facts, and is not in conflict with our conclusion. The instruction could not fail to prejudice defendant and is sufficient ground to make a new trial necessary.

That the part of the charge complained of in the second assignment is clear error is demonstrated by the principles already noted. We think the foregoing discussion is a sufficient answer to the questions raised by the third, fourth and fifth assignments of error, so far as they are covered by the statement of the question involved.

The judgment is reversed and a new trial awarded.