Ruggieri *v.* West Forum Corporation et al., Appellants.

176

Argued May 4, 1971. Before BELL, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

*Frank J. Marcone,* for appellants.

*Ralph W. Kent,* with him *Kent, Elicker & McQuiddy,* for appellees.

OPINION BY MR. JUSTICE O'BRIEN, October 12, 1971:

Antonio Ruggieri and Rosa Ruggieri, appellees, were the owners of a restaurant-taproom business and the real estate on which it was situated, known as the "Val Rose" in Malvern, Pennsylvania, and were the licensees of a liquor license for the premises. The business was managed by their son, Valentino Ruggieri (Valentino). The name "Val Rose" is a combination of the names of Rose and Valentino Ruggieri, mother and son.

Antonio Ruggieri, who had had his leg amputated before June, 1966, was an elderly immigrant, almost unable to read the English language. His wife, Rosa, whose knowledge of English was only slightly better

than her husband's, was also up in years. For this reason, both responded favorably to suggestions by their son, Valentino, that they turn the business over to him and a partner, Louis Zampitella (Zampitella), one of the appellants in this case. Zampitella and Valentino formed the West Forum Corporation for the purposes of purchasing and operating the business. Testimony indicates that the senior Ruggieris intended that Zampitella would pay $40,000 for his share of the premises and liquor license, whereas Valentino was to receive his share from his parents as a gift.

In any event, on September 12, 1966, the senior Ruggieris entered into a written contract with West Forum Corporation, acting by and through its president and treasurer, Zampitella, and its secretary, Valentino, under the terms of which the corporation was to purchase the restaurant-taproom business, the real estate on which it was operated, and the liquor license for the sum of $40,000, to be paid by the execution and delivery of a judgment note for $40,000, due and payable October 1, 1966. The contract provided for no down payment, in escrow or otherwise, of any cash amount. The contract was prepared by counsel for Valentino. Neither of the senior Ruggieris fully understood its contents, but when they suggested that it should be submitted to their lawyer, both Valentino and Zampitella told them that that would not be necessary. Rosa Ruggieri telephoned her attorney, who advised her not to sign. Nevertheless, in reliance on the representations of their son, Valentino, the senior Ruggieris signed the contract.

Immediately after execution of the contract, the West Forum Corporation entered into possession of the restaurant premises and began operating the business. They also caused the application for transfer of the liquor license, duly executed by the senior Ruggieris,

to be delivered to the Liquor Control Board. Even though the sales agreement had provided that the judgment note for the $40,000 purchase price was to be payable October 1, 1966, every time the Ruggieris inquired as to their money, their son explained that they would get the money as soon as the transfer of the liquor license was approved.

Prior to the execution of the written contract, during the course of oral negotiations, Zampitella advanced $1,000 to the restaurant business for the payment of bills due and owing. About mid-July, 1966, in anticipation of the agreement, he began renovations of the restaurant building, costing, he estimated, upwards of $26,000.

Meanwhile, the mortgage commitment, which Zampitella had relied upon as the source for his obligation on the purchase price, was cancelled. On October 20, 1966, having failed to receive the $40,000 purchase price from Zampitella as agreed upon, the senior Ruggieris notified him that they considered the agreement terminated, and that the West Forum Corporation would be expected to vacate the premises.

No such vacation took place. Instead, on November 2, 1966, the transfer of the liquor license to the corporation was approved, even though the October 20, 1966, notice of termination stated that written notice had been sent to the Liquor Control Board that the proposed transfer had been cancelled.[1] Apparently negotiations continued with an effort by the senior Ruggieris to obtain their $40,000.

However, the West Forum Corporation was coming apart at the seams. Valentino, involved in domestic

---

[1] Appellant's brief alleges that the Ruggieris had cancelled in October only as the result of their temporary displeasure over the antics of their son, who was involved in domestic difficulties, and had later changed their minds.

problems, left for California in pursuit of his wife. Upon his return, he and Zampitella became totally deadlocked, partly as a result of Zampitella's refusal to elect Valentino's mother, Rosa, to the board. Zampitella brought an action to dissolve the corporation. Having apparently obtained the necessary financing, he demanded that settlement be made, but the senior Ruggieris refused to do so. The senior Ruggieris then brought suit, demanding that the liquor license be re-transferred, that Zampitella, Valentino and West Forum Corporation be enjoined from continuing to occupy the premises, or from mortgaging, encumbering or attempting to sell the property in any way, and that the defendants be required to account for all profits, and that they pay the sum required to restore the premises to its former condition.

In that action, plaintiffs took default judgment against all defendants for failure to file answers. Thereafter, by stipulation approved by the court, the judgment against Zampitella only was opened, and he was let into a defense. He filed an answer, and the case was tried on the complaint and his answer. The default judgments against West Forum Corporation and Valentino remain of record.

While the matter was under consideration, Zampitella died, and his widow, Anna Zampitella (appellant), who had been appointed executrix of his estate, was substituted of record.

An adjudication was filed in the instant case on August 29, 1970, the same date on which an opinion and order were filed in favor of Zampitella in his suit to dissolve West Forum Corporation. Appellant filed exceptions to the chancellor's decree, but these exceptions were overruled and dismissed, and the decree nisi was entered as a final decree. This appeal followed.

The chancellor found that the senior Ruggieris were entitled to relief on the theory of a constructive trust because their son, Valentino, had taken advantage of the confidential relationship he had with them to induce them to sell their restaurant and transfer the liquor license to West Forum Corporation. As the chancellor pointed out, once a fiduciary or confidential relationship is shown to exist, the burden is shifted to the person who is in such relationship, here Valentino, to prove absence of fraud, and that the transaction was fair and equitable. The record supports the chancellor's finding that neither Valentino nor appellant met that burden. See *Shydlinski v. Vogt*, 406 Pa. 534, 537, 179 A. 2d 240 (1962), *Young v. Kaye*, 443 Pa. 335, 279 A. 2d 759 (1971).

Appellant does not really challenge that finding. Her brief has no kind words for Valentino. Instead, it argues that Zampitella was also an innocent victim of Valentino's machinations, and that by its decree, the court effectively worked a forfeiture because the liquor license is the only asset upon which the Zampitella estate can rely to make itself whole for the money expended by Zampitella in renovating the restaurant and paying money on the bills before the closing date.

Although the chancellor was correct in finding that Valentino had taken advantage of his parents in inducing them to agree to the transaction, and it would be unconscionable to compel them to sell their entire business to the Zampitella estate for $40,000, even though appellant now contends that she is ready to go to closing, we agree with appellant that it would be equally unfair to allow the Ruggieri family[2] to benefit from the money invested in the restaurant by Zampitella in anticipation of the settlement. Equity courts are not bound by strict common-law rules, and they possess

---

[2] Parents and son are apparently reconciled.

broad powers to do substantial justice, and will depart from the rigid rule of law wherever it is necessary to accomplish the ends of justice. *Weissman v. Weissman,* 384 Pa. 480, 121 A. 2d 100 (1956). Accordingly, it was error for the court to decree that, *inter alia,* "Defendants and each of them, their officers, agents, servants and employees are commanded and directed to account to plaintiffs for all rents, issues, profits and uses of the subject business and premises during their occupancy and possession thereof, entry of judgment in favor of plaintiffs for amounts due to plaintiffs, if any, to be deferred and await the disposition of said accounting," without also requiring that appellant be reimbursed for the funds expended by Zampitella, with the knowledge of the appellees, in anticipation of settlement. Accordingly, we shall remand this case for an additional hearing to determine how much was expended, with instructions that the decree be amended to the effect that appellant be reimbursed by the Ruggieris for that amount.

Decree modified and case remanded for further proceedings consistent with this opinion, each party to bear own costs.

Mr. Justice JONES took no part in the consideration or decision of this case.