425 A.2d 412

**Harry W. FROWEN, Executor of the Estate of Blanche Frowen, Deceased, Appellant,**

v.

**J. Marshall BLANK.**

Supreme Court of Pennsylvania.

Argued Sept. 25, 1980.

Decided Feb. 4, 1981.

Robert J. Milie, Greensburg, for appellant.

Christ J. Walthour, Jr., and S. Wayne Whitehead, Greensburg, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN, JJ.

## OPINION OF THE COURT

NIX, Justice.

This appeal is in response to a dismissal of an action in equity seeking the rescission of an agreement for the sale of real estate. The basis of the action was an alleged fraud in seeking the execution of the agreement. The Chancellor was affirmed by the court *en banc* in finding that fraud had not been established nor had there been a showing that a confidential relationship existed between the parties to the agreement.

On May 22, 1968, Blanche Frowen executed an agreement to sell to J. Marshall Blank, appellee, her farm containing approximately seventy (70) acres in Unity Township, Westmoreland County, for the sum of $15,000.00, of which $500.00 was paid prior to the execution of the agreement and the remaining balance of $14,500.00 no later than one year following the death of Ms. Frowen. Interest computed at the rate of five percent per annum was to be paid quarterly on the unpaid balance. The instant action was initiated by a complaint in equity filed November 29, 1973 by Blanche Frowen as plaintiff. This action resulted in a decree by the Chancellor which was affirmed by the Court *en banc*, with one judge dissenting,[1] dismissing the complaint, holding that Ms. Frowen had failed to establish her burden of proof regarding the allegations of fraud. On appeal to the Superior Court the case was remanded. *Frowen v. Blank*, 242 Pa.Super. 276, 363 A.2d 1267 (1976) *(Frowen I)*. In *Frowen I*, Ms. Frowen argued "that if she did not prove fraud, she did prove a breach of confidential relationship." *Id.*, 242 Pa.Super. at 277, 363 A.2d at 1268. The Superior Court was inclined to agree that there had been a breach of a confidential relationship but declined to so rule and elected to remand because of the inadequacy of the lower court's findings as to the existence of a confidential relationship. Thus in *Frowen I* the lower court was expressly directed on remand to resolve the evidentiary disparities necessary to decide whether a *prima facie* case on the issue of confidential relationship had been established.

Upon remand the Chancellor, after setting forth findings of fact and conclusions of law in which he determined that no confidential relationship had been established, reaffirmed his earlier decree. The exceptions were dismissed this time by a unanimous court *en banc*. On appeal the Superior

1. Judge Mihalich, sitting on the court *en banc*, dissented. After noting the inadequacy of the Chancellor's findings of fact and conclusions of law, Pa.R.Civ.P. 1517, he stated his view that the record did reflect the existence of a confidential relationship and that the burden should have shifted to appellee to establish the absence of fraud and that the transaction was fair and equitable.

Court affirmed with one judge dissenting. *Frowen v. Blank*, 266 Pa.Super. 145, 403 A.2d 585 (1979). (*Frowen II*).[2] This Court granted review to determine whether the record did establish *prima facie* the allegation of fraud or in the alternative whether it established a confidential relationship between decedent and appellee.

■ We begin our analysis remembering that the findings of the Chancellor will not be reversed unless it appears that he has clearly abused his discretion or committed an error of law. *Yuhas v. Schmidt*, 434 Pa. 447, 258 A.2d 616 (1969). Where credibility of witnesses is important to the determination, the Chancellor's findings are entitled to particular weight because of his opportunity to observe their demeanor. *Brentwater Homes, Inc. v. Weibley*, 471 Pa. 17, 369 A.2d 1172 (1977). Where a reading of the record reasonably can be said to reflect the conclusions reached by the Chancellor, a reviewing court may not substitute its judgment for that of the Chancellor. *Payne v. Kassab*, 468 Pa. 226, 361 A.2d 263 (1976). A reviewing court, however, is not bound by findings which are without support in the record or have merely been derived from other facts. *In re McKinley's Estate*, 461 Pa. 731, 337 A.2d 851 (1970).

■ After a consideration of the Chancellor's findings and a review of the record we are satisfied that appellant did not prove fraud. The basic theory to establish the fraud allegation is that the decedent was deceived into believing that the agreement entered into on May 22, 1968 conveyed a leasehold interest to appellee and was not an outright sale. To support this view, appellant points to the age of decedent at the time of execution (eighty-six years of age); her infirmities at the time (impaired hearing); her limited formal training (two years of elementary training); and the agreement itself. It is argued that the payment of interest

2. During the course of this litigation Ms. Frowen died on June 26, 1978. Upon application the executor of her estate was permitted by the Superior Court to be substituted by order dated October 17, 1978. Use of the term appellant in this opinion is intended to refer to the executor and use of the term decedent refers to Ms. Frowen.

on a quarterly basis, that the total consideration was $15,000 for a property worth approximately $35,000 at the time of the purported sale, that only $500 of the "purchase price" was required to be paid within her lifetime would comport to a lease agreement and not the sale of a fee interest. However, the *sine qua non* of actionable fraud is the showing of a deception. *Kriner v. Dinger*, 297 Pa. 576, 147 A. 830 (1929); *Cox v. Highley*, 100 Pa. 249 (1882); *Huber v. Wilson*, 23 Pa. 178 (1854); *Shane v. Hoffmann*, 227 Pa.Super. 176, 324 A.2d 532 (1974). A fraud consists in anything calculated to deceive, whether by single act or combination, or by suppression of truth, or a suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture. *In re McClellan's Estate*, 365 Pa. 401, 407, 75 A.2d 595, 598 (1950); *In re Reichert's Estate*, 356 Pa. 269, 274, 51 A.2d 615, 617 (1947).

Here appellee presented evidence, which the Chancellor found to be creditable, that at the time the agreement was executed it was fully explained to the decedent, by two separate lawyers, and that she was aware that it was a sale of her property and not a lease. See Findings of Fact No. 11.[3] This finding negates the possibility of any deception based upon the nature and the terms of the document executed on May 22, 1968.

Nonetheless, appellant stresses what he terms as the patent unfairness of the agreement and argues that fraud should be presumed from that fact coupled with the age and condition of decedent at the time of the execution of the agreement. We recognize that allegations of fraud may be supported, in proper circumstances, by presumption. *Goldstein Co. v. Greenberg, Inc.*, 352 Pa. 259, 42 A.2d 551 (1945). However, such is not the case unless the facts clearly proven warrant a presumption of the existence of the alleged fraud. *Goldstein v. Greenberg, supra*. A deception

---

**3.** The Chancellor stated in Finding 11:
The Plaintiff completely understood the terms and conditions of the agreement dated May 22, 1968, as a result of discussions between S. Wayne Whitehead, Esquire, Howard M. Whitehead, Esquire, and Plaintiff.

as to the nature of the agreement may not be presumed from its asserted unfairness to the complaining party where the Chancellor has found, based upon credible and competent evidence, that that party had been fully explained and understood the nature of the agreement at the time of its execution. We, therefore, affirm the Superior Court's acceptance of the Chancellor's conclusion that appellant failed to prove fraud in this record.

As previously noted, appellant argues in the alternative that the record establishes the existence of a confidential relationship between decedent and appellee. If a confidential relationship has been established on this record, our earlier finding that appellant had failed to affirmatively show fraud would not preclude appellant from some relief. Rescinding a contract because of fraud calls into play one set of criteria; rescission based on the breach of a confidential relationship is another proposition.

When the relationship between the parties to an agreement is one of trust and confidence, the normal arm's length bargaining is not assumed, and overreaching by the dominant party for his benefit permits the aggrieved party to rescind the transaction. *Ruggieri v. West Forum Corp.,* 444 Pa. 175, 282 A.2d 304 (1971); *Young v. Kaye,* 443 Pa. 335, 279 A.2d 759 (1971); *McCown v. Fraser,* 327 Pa. 561, 192 A. 674 (1937); *Null's Estate,* 302 Pa. 64, 153 A. 137 (1930). This is so because the presence of a confidential relationship negates the assumption that each party is acting in his own best interest. *Young v. Kaye, supra; McClatchy's Estate,* 433 Pa. 232, 249 A.2d 325 (1969); *Null's Estate, supra.* Once a confidential relationship is shown to have existed, it then becomes the obligation of the party attempting to enforce the terms of the agreement to establish that there has not been a breach of that trust. *Scott Estate,* 455 Pa. 429, 316 A.2d 883 (1974); *Ruggieri v. West Forum Corp., supra; McClatchy's Estate, supra; Kees v. Green,* 365 Pa. 368, 75 A.2d 602 (1950); *Brooks v. Conston,* 356 Pa. 69, 51 A.2d 684 (1947).

■ We agree with Judge Spaeth in his dissent in *Frowen II* that if such a relationship did exist between the decedent and the appellee, finding that the decedent understood the terms of the agreement does not necessarily preclude a finding that the relationship had been breached. *Frowen v. Blank, supra*, 266 Pa.Super. at 153–155, 403 A.2d at 589–90. Where a confidential relationship exists, the law presumes the transaction voidable, unless the party seeking to sustain the validity of the transaction affirmatively demonstrates that it was fair under all of the circumstances and beyond the reach of suspicion. *See Leedom v. Palmer*, 274 Pa. 22, 117 A. 410 (1922); *Ruggieri v. West Forum Corp.*, 444 Pa. 175, 282 A.2d 304 (1971); *Young v. Kaye*, 443 Pa. 335, 279 A.2d 759 (1971); *Appeal of Darlington*, 147 Pa. 624, 23 A. 1046 (1892); *Stepp v. Frampton*, 179 Pa. 284, 36 A. 177 (1897). The crux of the controversy presently before us is whether the record here establishes the existence of a confidential relationship. The majority of the Superior Court agreed with the Chancellor's conclusion that no such relationship had been established. Our review of this record forces the contrary conclusion.

■ The general test for determining the existence of such a relationship is whether it is clear that the parties did not deal on equal terms. *McClatchy's Estate, supra; Carson Estate*, 431 Pa. 311, 245 A.2d 859 (1968); *Brooks v. Conston, supra; Null's Estate, supra; Leedom v. Palmer, supra.*

We have had occasion to describe a confidential relationship as follows:

Confidential relation is not confined to any specific association of the parties; it is one wherein a party is bound to act for the benefit of another, and can take no advantage to himself. It appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed; in both an unfair advantage is possible.

*Leedom v. Palmer, supra*, 274 Pa. at 25, 117 A. at 411. *See also Scott Estate, supra, Peoples First Nat'l Bk. &*

*Trust Co. v. Ratajski*, 399 Pa. 419, 423, 160 A.2d 451, 452 (1960); *Kees v. Green*, 365 Pa. 368, 374, 75 A.2d 602 (1950); *Hamberg v. Brasky*, 355 Pa. 462, 50 A.2d 345 (1947). A confidential relationship was again described in *Brooks v. Conston*, 356 Pa. 69, 76–77, 51 A.2d 684, 688 (1947):

Confidential relation is any relation existing between parties to a transaction wherein one of the parties is bound to act with the utmost good faith for the benefit of the other party and can take no advantage to himself from his acts relating to the interest of the other party: *Leedom v. Palmer*, 274 Pa. 22, 117 A. 410; *Harrison v. Welsh*, 295 Pa. 501, 145 A. 507; *Null's Estate*, 302 Pa. 64, 153 A. 137. This Court has recently defined confidential relationship in *Drob v. Jaffe*, 351 Pa. 297, 41 A.2d 407. Mr. Justice Horace Stern said, p. 300 [41 A.2d 407]: "... a confidential relationship is not limited to any particular association of parties but exists wherever one occupies toward another such a position of advisor or counsellor as reasonably to inspire confidence that he will act in good faith for the other's interest. ... " That case was cited with approval in *Hamberg v. Barsky et al.*, 355 Pa. 462, 466, 50 A.2d 345, and in *Shook v. Bergstrasser*, 356 Pa. 167, 51 A.2d 681. See also: *McCown v. Fraser*, 327 Pa. 561, 192 A. 674; *Metzger v. Metzger*, 338 Pa. 564, 14 A.2d 285; *Stewart Will*, 354 Pa. 288, 47 A.2d 204; *Dichter Will*, 354 Pa. 444, 47 A.2d 691.

Recognizing the nature of fraudulent schemes of this type and the elaborate efforts often employed to conceal it, we have stated:

It is no hardship upon an honest man to require a reasonable explanation of every suspicious circumstance, and rogues are not entitled to a veto upon the means employed for their detection. *Shechter v. Shechter*, 366 Pa. 30, 76 A.2d 753, 756 (1950) *quoting* from *Kaine v. Weigley*, 22 Pa. 179, 184 (1853).

The record establishes that at the time of the execution of the agreement decedent was 86 years old and had been suffering from a loss of hearing and sight. She had no

more than two or three years of formal education and little knowledge of business matters. A widow since 1935, Ms. Frowen had been living alone on her 70 acre farm when appellee and his wife purchased the farm adjoining hers in the early 1960's. A close social relationship quickly developed between the older woman and the young couple. Decedent taught the young couple farm-related crafts, while on occasion appellee helped her with minor farm chores. Because she had never learned to drive, appellee and his wife often drove decedent to local social events, such as fairs and grange meetings, and took her to dinner to celebrate decedent and appellee's birthdays which were only one day apart. For years decedent rented her barn to appellee for the storage of machinery.

On April 14, 1967, appellee prepared a one-page handwritten document which stated that decedent agreed to sell her farm to appellee for $15,000. This document was signed by decedent in the presence of appellee only. Appellee, approximately one year later, took this handwritten document to his attorney and instructed him to draft the agreement now in question. On May 22, 1968, appellee drove Ms. Frowen to his attorney's office. The agreement, prepared in advance, was read to Ms. Frowen by appellee's attorney and she signed it. There is uncontroverted testimony on the record that she did not read the agreement. At no time did decedent have assistance from her own counsel nor did she ever discuss the transaction with anyone except appellee and his representatives. The Chancellor found appellee's attorney and the attorney's brother, who had also acted as appellee's attorney in the past, explained the agreement to her. However, she never consulted the attorneys concerning the fairness of the price to be obtained and the method of payment.

As stated above, under the agreement Ms. Frowen agreed to sell to appellee her seventy (70) acre farm for the sum of $15,000, of which $500 was paid prior to the execution of the agreement and the remaining balance no later than one year

following the death of Ms. Frowen. Appellee was to make quarterly interest payments at the rate of five (5%) percent on the unpaid balance. Appellant retained a life interest in the house and garden and in the income of the gas lease on the premises. Appellee was to maintain the house in good repair, a promise he failed to keep. There is creditable testimony on the record that the market value of decedent's farm clearly exceeded the sales price. Appellant's expert witness testified that as of the date of the agreement the fair market value of the farm was $500 per acre, or $35,000. This estimate was based on sales of comparable nearby farms during 1968. Appellee also testified he had purchased his own 55 acre farm, adjoining decedent's, in 1962, for $14,000.

The foregoing facts convince us that a confidential relationship existed between decedent and appellee at the time the agreement was executed. Appellee had gained the confidence of decedent over a number of years through their close social relationship. He asked decedent to sell him her farm and was the only person to advise her on the sale. The *Restatement of Trusts 2d*, § 2(b) notes that "[a] confidential relation exists between two persons when one has gained the confidence of the other and purports to act or advise with the other's interest in mind." Such a relationship "is particularly likely to exist where there is . . . [a relation] of friendship." *Id.* This Court has described a confidential relationship as one where on one side there is "weakness, dependence or trust justifiably reposed . . . ." *Leedom v. Palmer, supra,* 274 Pa. at 25, 117 A. at 41 and as one where "one occupies toward another such a position of advisor or counsellor as reasonably to inspire confidence that he will act in good faith for the other's interest . . . ." *Drob v. Jaffe,* 351 Pa. 297, 300, 41 A.2d 407, 408 (1945). Decedent's age, hearing and sight infirmities, and long friendship with appellee indicate ". . . dependence or trust justifiably reposed." Appellee drafted the handwritten agreement and later had his attorney prepare the more complete one. He

drove decedent to his attorney's office where without independent advice she agreed to sell her farm. Appellee was her sole advisor or counsellor at a time when she justifiably placed her confidence in him and believed that he would act in good faith for her interest.

As noted in *Frowen I*, the facts of this case are strikingly similar to those in *Brooks v. Conston*, 356 Pa. 69, 51 A.2d 684 (1947) where this Court found the existence of a confidential relationship. In *Brooks*, plaintiff and her husband owned and managed a chain of stores. When the husband died, Conston, a close friend and neighbor persuaded the widow to sell him the stores. The widow had limited business experience, and without consulting anyone except Conston concerning the sales price, she sold him the business for inadequate consideration. Conston then obtained a considerable unsecured cash loan from the widow to help finance the purchase and repaid it with profits from the business, an arrangement not unlike appellee's delayed obligation.

Having concluded that a confidential relation existed between decedent and appellee, there remains to be determined whether the transfer was "fair, conscientious and beyond the reach of suspicion." *Leedom v. Palmer, supra*, 274 Pa. at 25, 117 A. at 41. Transactions between persons occupying a confidential relation are prima facie voidable, and the party seeking to benefit from such a transaction has the burden of proving that the transfer was indeed fair, conscientious and beyond the reach of suspicion. *Leedom v. Palmer, supra*. Since appellee has not had an opportunity to do so, the matter must be returned to the court below for further proceedings consistent with this opinion.

Accordingly, the decree is reversed and the cause remanded to the Orphans' Court Division, Court of Common Pleas, Westmoreland County, for further proceedings consistent with this opinion.

ROBERTS, J., concurs in the result.