J-A34006-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JEFFREY AMSLER, KAREN AMSLER, AND KATHRYN CORRIGAN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | |
| v. | |
| ORCHARD HOUSE PROPERTIES LLC, FRED R. AMSLER JR., FRED R. AMSLER JR. LIVING TRUST, DONNA J. AMER, AND CAMBRIDGE TRAINING PARTNERS L.P. | |
| Appellants | No. 1029 MDA 2015 |

Appeal from the Order May 14, 2015
In the Court of Common Pleas of Sullivan County
Civil Division at No(s): 2013-CV-253

BEFORE:  PANELLA, J., OTT, J., and JENKINS, J.

MEMORANDUM BY PANELLA, J.            **FILED FEBRUARY 17, 2016**

Appellants, Orchard House Properties LLC, Fred R. Amsler Jr., Fred R. Amsler Jr. Living Trust, Donna J. Amer, and Cambridge Training Partners L.P., appeal from the order entered May 14, 2015, in the Court of Common Pleas of Sullivan County, which denied their preliminary objection to compel arbitration. We vacate and remand this case for further proceedings.

By way of background, Appellant Fred R. Amsler is the father of Appellees, Jeffrey Amsler and Karen Amsler. In 2010, Fred Amsler divorced the siblings' mother, Ilene Amsler, after more than 50 years of marriage. Appellant Donna J. Amer is the purported paramour of Fred R. Amsler. The entities at issue, Orchard House Properties, LLC and Cambridge Training

Partners, L.P., were formed to own and control various assets and income belonging to Fred R. Amsler. The trial court summarized the relevant details of this internecine familial dispute as follows.

## A. The Orchard House Properties, LLC Operating Agreement

On or about November 21, 2002, Orchard House Properties, LLC was organized and established as a Nevada limited liability company. An Operating Agreement was prepared on November 5, 2002 establishing and delineating the company purpose, scope, company interests, management, members, applicable law, venue, etc. Said agreement was signed by the following members with their signatures witnessed: Karen M. Amsler, Kathryn A. Corrigan, Patricia M. Becknell and Jeffrey S. Amsler. Exhibit A of the Operating Agreement set forth that these four (4) members were listed with a capital percentage of twenty five percent (25%) each and capital contributions of Ten Dollars ($10.00) each.

On November 29, 2002[,] Jeffrey S. Amsler signed a Certificate of Acknowledgement, wherein he acknowledged and accepted his appointment as President of Orchard House Properties, LLC and assented to "all provisions and stipulations as herein imposed and expressed in the foregoing Limited Liability Company Agreement." Jeffrey S. Amsler's signature was witnessed and notarized. On or about November 29, 2002[,] Karen M. Amsler signed a Certificate of Acknowledgement, wherein she acknowledged and assented to "all provisions and stipulations as herein imposed and expressed in the foregoing Limited Liability Company Agreement." Karen M. Amsler's signature is witnessed and notarized.

Article one Section 1.10 of the Operating Agreement states "[v]enue for any dispute arising under this Operating Agreement or any disputes among any members or the Limited Liability Company shall be in the county of the Registered Office of the Limited Liability Company." See, Operating Agreement, p.6. Article 1.07 states "the registered office of the Limited Liability Company is 250 S. Center Street, Suite 500, Reno, Nevada 89501."

Orchard House Properties, LLC held annual meetings in accordance with the Operating Agreement wherein all officers were present, the officers attended to the Limited Liability Company's business as delineated in the Operating Agreement for approximately eleven (11) years until [Appellees] instituted the instant action.

**B. The Cambridge Trading Partners Limited Partnership**

On or about October 15, 1991[, an] Agreement of Limited Partnership [for] Cambridge Trading Partners was executed among Fred. R. Amsler as General Partner and Fred R. Amsler and Ilene A. Amsler each as a Limited Partner. On or about November 5, 2002, an Amendment and Restatement was executed in accordance with the Nevada Limited Partnership Act "for purpose of forming and continuing a limited partnership (the "Partnership") in accordance with the provisions of the Nevada Limited Partnership Act (the "Act") and set forth by Fred R. Amsler, as the General Partner and, the Fred R. Amsler Trust and the Ilene A. Amsler Trust as Limited Partners.["] (P.1 of Cambridge Trading Partners Amendment and Restatement). The Amended Restatement Agreement of Limited partnership (the "Agreement") consists of twenty[-]nine (29) provisions related to the formation, scope, objective, partnership duties and responsibilities. (See Paragraph 23, Misc. C). The Arbitration of Disputes [provision] states "[a]ny dispute arising out of or in connection with this Agreement, if not settled by mediation, shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and any decision rendered in such arbitration shall have the same effect as if made by a court having proper jurisdiction." (P. 55 of the Agreement).

On or about October 18, 2010[,] an Assignment of fifty percent (50%) of limited partnership interests held by the Ilene A. Amsler Trust were assigned to the Fred R. Amsler Trust. The Trustees of the Fred R. Amsler Trust then desired to assign five percent (5%) of the limited partnership interests to Jeffrey S. Amsler. On or about November 9, 2009[,] at the Annual Meeting of the Members of the Cambridge Training Partners, LP, the limited partners desired to transfer interests in Cambridge Trading Partners, LP to reflect the above assignments. Members Fred R. Amsler, Jeffrey S. Amsler and Ilene A. Amsler were present at said meeting. At this Annual Meeting of the members of the Cambridge Trading Partners, LLC the resolution was

adopted which confirmed "that on May 29, 2010, Ilene A. Amsler transferred her 50% (fifty percent) Limited Partnership interest to Fred R. Amsler, Jr. Following the transfer on the same date, Fred R. Amsler, Jr. transferred 41% (forty[-]one percent) of his Limited Partnership interest to the Fred R. Amsler, Jr. Trust and 5% (five percent) of his Limited Partnership [interest] to Jeffrey S. Amsler." See, Minutes of the 2010 Meeting of the Members. Members Fred R. Amsler, Jr. and Jeffrey S. Amsler were present at the meeting.

## C. [Appellees'] Complaint

On or about October 16, 2013, [Appellees] filed a civil action against Fred R. Amsler, Jr. and Orchard House Properties, LLC. Thereafter on or about July 23, 2014, [Appellees] filed a Complaint and Praecipe to Join Additional Defendants, namely Cambridge Trading Partners, LP, Fred R. Amsler Revocable Living Trust and Donna Amer. In their Complaint, [Appellees] assert that Fred R. Amsler, Jr. was a fiduciary that dominated the affairs of Cambridge Trading Partners, LP, in which Jeffrey Amsler was the only limited partner, in comp[l]ete secrecy and in breach of his confidential and fiduciary relationships between he and the sibling Amsler. More specifically, the Complaint sets forth the following causes of action:

Count I:       Breach of the Operating Agreement
               Plaintiffs against the Defendant LLC parties
Count II:      Unjust Enrichment
               Plaintiffs against the Defendant LLC parties
Count III:     Conversion
               Plaintiffs against the Defendant LLC parties
Count IV:      Breaches of Fiduciary Duty
               Plaintiffs against Fred Amsler
Count V:       Breaches of the Partnership Agreement
               Jeff Amsler against Fred Amsler and the Defendant Partnership
Count VI:      Unjust Enrichment
               Jeffrey Amsler against the Defendant Partnership Parties
Count VII:     Conversion
               Jeffrey Amsler against the Defendant Partnership Parties
Count VIII:    Breaches of Fiduciary Duty
               Jeffrey Amsler against Fred Amsler

Count IX: Aiding and Abetting Breaches of Fiduciary Duty
Plaintiffs against Donna Amer

Count X: Civil Conspiracy
Plaintiffs against Defendants

County XI: Equitable Accounting
Plaintiffs against Fred Amsler and the Defendant Entities

Count XII: Declaratory Judgment
Plaintiffs against Defendants

Count XIII: Preliminary and Permanent Injunctive Relief
Plaintiffs against Fred Amsler and Donna Amer

## D. [Appellants'] Preliminary Objections

On or about September 8, 2014[,] [Appellants] filed Preliminary Objections to [Appellees'] Complaint. …

[Appellants'] Preliminary Objections [maintain, *inter alia*,] that [the trial court] lacked subject jurisdiction and that venue in the Court of Common pleas of Sullivan County was improper. Specifically, [Appellants] claimed that [the trial court] could not properly assert subject matter jurisdiction over Counts V, VI, VII, VIII, X, XI, and XII which related to [Appellee], Jeffrey S. Amsler['s] claims over [Appellants,] Fred A. Amsler, Jr. and Cambridge Trading Partners, LP, since a valid arbitration agreement existed. [Appellants] asserted that Jeffrey S. Amsler accepted and agreed to the terms and conditions within the Partnership Agreement which included the agreement to arbitrate "[a]ny dispute arising out of or in connection with [the Partnership] Agreement." Furthermore, the Partnership Agreement of Cambridge Trading Partners, LP (hereinafter "Partnership Agreement") required mediation and if the dispute could not be settled, then arbitration. As such, [Appellants] argued that counts V, VI, VII, VIII, X, XI, and XII must be resolved under and in accordance with the commercial arbitration rules of the American Arbitration Association since that was specifically agreed to by the parties in the Partnership Agreement and [the trial court] lacked subject matter jurisdiction as a result.

Trial Court Opinion, 12/2/15 at 2-7.

After hearing argument on the Appellants' preliminary objections, the trial court issued an order on May 14, 2015, which summarily overruled the preliminary objections to Appellees' complaint in their entirety.

Appellants filed a timely appeal from the May 14, 2014, order denying preliminary objections.[1] Subsequent thereto, Appellees filed a motion to quash the appeal as having been taken from an order that is interlocutory and not appealable. Appellants filed an answer to that motion, asserting that the subject order denied a request to compel arbitration. This Court issued an order denying the application to quash to the extent the May 14 order denied Appellants' preliminary objection invoking the parties' arbitration agreement. To the extent that the May 14 order denied Appellants' preliminary objections that raised issues unrelated to arbitration, we granted the application to quash. This matter is now ripe for our review.

Appellants frame the limited issue on appeal as follows.

_____

[1] On May 27, 2015, Appellants filed a motion for reconsideration of the trial court's May 14 order denying the preliminary objections to Appellees' complaint. Argument was held on the motion on September 16, 2015, after which, the trial court granted Appellants' motion for reconsideration. In their appellate brief, Appellees argue that the trial court's order granting the motion for reconsideration, issued after the thirty-day appeal period under Pa.R.A.P. 903(a) expired, is void *ab initio*. **See** Appellees' Brief at 3 n.4. However, we note that our review in the instant appeal is limited solely to the propriety of the trial court's May 14 order denying the preliminary objections invoking the parties' arbitration agreement. As such, we do not reach a determination as to the validity of the order granting reconsideration.

Whether the trial court committed an error of law and/or an abuse of discretion in denying Appellants' Preliminary Objections to compel arbitration since a valid arbitration clause was contained in the Partnership Agreement and the dispute was within the scope of the arbitration clause.

Appellants' Brief at 4.

As a prefatory matter, we must address Appellees' assertion that this court is without jurisdiction to entertain the instant appeal. We note that

[o]ur jurisdiction to review the propriety of the trial court's order overruling preliminary objections in the nature of a motion to compel arbitration is conferred by Pa.R.A.P. 311(a)(8), which provides that an interlocutory appeal may be taken as of right from any order made appealable by statute, and by 42 Pa.C.S. § 7320(a)(1) of the Uniform Arbitration Act, which authorizes an appeal from [a] court order denying an application to compel arbitration.

*Collier v. National Penn Bank*, --- A.3d ---, ---, 2015 WL 7444713 at *2 (Pa. Super, filed Nov. 24, 2015) (internal quotation marks and a citation omitted).

A party may appeal directly from the order denying a preliminary objection invoking an arbitration agreement; a separate petition to compel arbitration is not required. *See Stewart v. GGNSC-Canonsburg, L.P.*, 9 A.3d 215, 218 (Pa. Super. 2010). As the current appeal is properly before us, we deny Appellees' request to quash the appeal. We proceed to the merits.

Our review of a claim that the trial court improperly denied the Appellants' preliminary objection in the nature of a petition to compel arbitration is limited to determining whether the trial court's findings are

- 7 -

supported by substantial evidence and whether the trial court abused its discretion in denying the petition. ***See Walton v. Johnson***, 66 A.3d 782, 787 (Pa. Super. 2013).

"We employ a two-part test to determine whether the trial court should have compelled arbitration: 1) whether a valid agreement to arbitrate exists, and 2) whether the dispute is within the scope of the agreement." ***Washburn v. Northern Health Facilities, Inc.***, 121 A.3d 1008, 1012 (Pa. Super. 2015) (citation omitted). "Whether a claim is within the scope of an arbitration provision is a matter of contract, and as with all questions of law, our review of the trial court's conclusion is plenary." ***MacPherson v. Magee Memorial Hospital for Convalescence***, --- A.3d ---, ---, 2015 WL 7571937 at *7 (Pa. Super., filed Nov. 25, 2015) (citation omitted) (*en banc*).

The arbitration clause at issue provides as follows.

**23. Miscellaneous**

. . .

> C. <u>Arbitration of Disputes</u>.  Any disputes arising out of or in connection with this Agreement, if not settled by mediation, shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and any decision rendered in such arbitration shall have the same effect as if made by a court having proper jurisdiction.

Amendment and Restatement to Agreement of the Cambridge Trading Partners, 11/5/02 at 55.

There appears to be no disagreement that the claims at issue, namely, Counts V, VI, VII, VIII, X, XI and XII of the Complaint averring breach of the partnership agreement, are within the scope of the agreement to arbitrate. Therefore, we must determine whether a valid arbitration agreement exists.

In its opinion, the trial court revisited its earlier decision overruling Appellants' preliminary objection to enforce the arbitration agreement and concluded that the arbitration provision should, in fact, be enforced. In so finding, the court determined that all parties agreed to the terms of the partnership agreement and that the arbitration clause was valid and enforceable. *See* Trial Court Opinion, 12/2/15 at 10. The court further stated that both parties had relied upon the terms of the Partnership Agreement and "[t]o now ignore the … arbitration terms of the Partnership Agreement would require this [c]ourt to enforce certain terms of the … Partnership Agreement while ignoring others. To do so would be inconsistent with the laws of the Commonwealth." *Id*. at 10-11.

Appellees counter that the arbitration agreement is unenforceable for numerous reasons. First and foremost, Appellees aver that a confidential relationship existed between Appellant, Fred Amsler and his son, Jeffrey Amsler, and that the arbitration agreement was not knowingly entered into. *See* Appellees' Brief at 10-11.

"A confidential relationship is marked by such a disparity in position that the inferior party places complete trust in the superior party's advice and seeks no other counsel, so as to give rise to a potential abuse of power."

*Lenau v. Co-eXprise Inc.*, 102 A.3d 423, 443 (Pa. Super. 2014) (citation omitted), *appeal denied*, 113 A.3d 280 (Pa. 2015). "[T]he existence of a confidential relationship requires a fact-sensitive inquiry not to be disposed rigidly as a matter of law." *Yenchi v. Ameriprise Financial Inc.*, 123 A.3d 1071, 1079 (Pa. Super. 2015).

> A contract that is the product of a confidential relationship is presumptively voidable "unless the party seeking to sustain the validity of the transaction affirmatively demonstrates that it was fair under all of the circumstances and beyond the reach of suspicion." *Frowen v. Blank*, 493 Pa. 137, 145, 425 A.2d 412, 416 (1981). More precisely, "the proponent of the contract must prove by clear and convincing evidence 'that the contract was free, voluntary and an independent act of the other party, entered into with an understanding and knowledge of its nature, terms and consequences.'" *Biddle v. Johnsonbaugh*, 444 Pa.Super. 450, 456, 664 A.2d 159, 162 (1995) (quoting *Kees v. Green*, 365 Pa. 368, 375, 75 A.2d 602, 605 (1950)). In *Frowen*, the Supreme Court explained the basis for this presumption:
>
>> When the relationship between the parties to an agreement is one of trust and confidence, the normal arm's length bargaining is not assumed, and overreaching by the dominant party for his benefit permits the aggrieved party to rescind the transaction. This is so because the presence of a confidential relationship negates the assumption that each party is acting in his own best interest. *Frowen*, 493 Pa. at 144, 425 A.2d at 416 (citations omitted). Thus, "[o]nce a confidential relationship is shown to have existed, it then becomes the obligation of the party attempting to enforce the terms of the agreement to establish that there has not been a breach of that trust." *Id*. at 144, 425 A.2d at 416; *Iron Worker's Sav. and Loan Ass'n v. IWS, Inc.*, 424 Pa.Super. 255, 270, 622 A.2d 367, 375 (1993) (citing *Frowen*, 493 Pa. at 144, 425 A.2d at 416).

- 10 -

***Paone v. Dean Witter Reynolds, Inc.***, 789 A.2d 221, 226 (Pa. Super. 2001).

Here, although Appellees alleged in response to Appellants' preliminary objections that a confidential relationship existed between Fred Amsler and Jeffrey Amsler and that the arbitration agreement was a product of that relationship, the trial court failed to conduct an inquiry into the existence of the confidential relationship prior to ruling on the merits of the preliminary objections.[2] As previously noted, our judicial inquiry when determining the validity of an arbitration agreement is limited to 1) whether a valid agreement to arbitrate exists, and 2) whether the dispute is within the scope of the agreement. ***See Washburn***, ***supra***. The fact-sensitive inquiry into the existence of a confidential relationship clearly falls outside of this limited scope of review.

Accordingly, we are constrained to vacate the trial court's order overruling Appellant's preliminary objection to enforce the arbitration agreement and remand this case for a hearing wherein the trial court must determine whether the evidence supports the existence of a confidential relationship. "If so, the trial court must determine whether the proponent of the arbitration provision (presumably the stronger party) has met its burden

_____

[2] Appellees raise the existence of a confidential relationship in Count VIII of their Complaint.  At this stage in the proceedings, we offer no opinion as to the sufficiency with which Appellees allege the existence of the a confidential relationship.

of showing that the provision is fair under all the circumstances, *Frown*, 493 Pa. at 145, 425 A.2d at 416, that it was entered into with knowledge of its nature and consequences, *Biddle*, 664 A.2d at 162, and thus that the provision was not itself a result of a violation of the trust reposed in the confidential relationship." *Paone*, 789 A.2d at 227. Where the evidence suggests that a confidential relationship did not exist, then the arbitration agreement is enforceable.

Order vacated. Motion to quash appeal denied. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/17/2016