Sandra J. BASILE and Laura Clavin

v.

H & R BLOCK, INC., H & R Block Eastern Tax Services, Inc. and Mellon Bank (DE) National Association.

Civ. A. No. 93–2583.

United States District Court,
E.D. Pennsylvania.

Aug. 1, 1995.

Steven E. Angstreich, Carolyn C. Lindheim, Levy, Angstreich, Finney, Mann & Burkett, P.C., Philadelphia, PA, Michael Coren, Philadelphia, PA, Jonathan De Young, Law Offices of Jonathan De Young, King of Prussia, PA, for plaintiffs.

David C. Corujo, Media, PA, Mary E. Kohart, Julia Anne Matheson, Drinker, Biddle & Reath, Philadelphia, PA, N. Louise Ellingsworth, Bryan Cave, Kansas City, MI, for defendant H & R Block, Inc.

Michael T. Scott, Reed, Smith, Shaw & McClay, Philadelphia, PA, Mary E. Kohart, Drinker, Biddle & Reath, Philadelphia, PA, N. Louise Ellingsworth, Bryan Cave, Kansas City, MI, for defendants Mellon Bank (DE) National Ass'n and H & R Block Eastern Tax Services.

## MEMORANDUM

LUDWIG, District Judge.

This action alleges violations of the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.,* state law violations of fraud, negligent misrepresentation, breach of fiduciary duty, the Pennsylvania Unfair Trade Practices and Consumer Protection Act, 73 Pa.C.S.A. § 201–2(4), and Delaware usury laws, Del. Code Ann. tit. 6, § 2301(a) (1975).[1] Jurisdiction is federal question. 28 U.S.C. § 1331. Defendants move for summary judgment as to all counts. By order of July 24, 1995 summary judgment was granted as to the federal question claims and issues; supplemental jurisdiction was relinquished, 28 U.S.C. § 1367(c); and the action remanded, 28 U.S.C. § 1447(c).

From 1990 to the present defendant H & R Block, Inc. has offered a "Rapid Refund Program" utilizing electronic filing services.[2] One feature is a refund anticipation loan. Under this plan the customer would obtain a loan from Mellon Bank in the amount of the refund, and the refund would be sent directly from the IRS to the bank.[3] Defendant Mel-

1. Count IV of the amended complaint claims punitive damages. Amended complaint ¶¶ 64–66. Defendants move for dismissal of this count because punitive damages constitute a remedy and not a separate claim. Defendant H & R Block's motion for summary judgment at 31–32; defendant Mellon Bank's motion for summary judgment at 39–40. Plaintiffs appear to agree. Response to motion for summary judgment at 46.

2. "Rapid Refund Services" include: direct deposit of the refund check to the taxpayer's checking or savings account, direct mailing of the refund check to the customer from the IRS, and

a balance due program. Response to motion for summary judgment, exhibit 23.

3. A customer can choose to file a return electronically without obtaining a refund anticipation loan. Defendant Mellon Bank's motion for summary judgment, exhibit A at 5. Without the loan the refund is received in two to three weeks instead of two to five days. *Id.* Mellon Bank did not participate in this option and no longer participates in the refund program. Sur-reply to motion for summary judgment at 9 n. 6; Response to motion for summary judgment, exhibit 7 at 7.

lon Bank's motion for summary judgment at 2. The bank charged $29 for processing the loan. Defendant H & R Block's motion for summary judgment at 4. A separate $25 or $35[4] fee was charged by H & R Block for the electronic filing service. *Id.*

According to the complaint, H & R Block's advertising misrepresented that the refund came directly from the IRS and was not a loan. Response to motion for summary judgment at 1–2. As a result, plaintiffs are alleged to have paid an inordinately high rate of interest and felt "taken advantage of and betrayed." *Id.* at 2. On April 23, 1993, having allegedly found that others were misled, plaintiffs filed this action in state court on behalf of all persons similarly situated.[5] On May 14, 1993 the action was removed to this court. The essence of the federal claim is that defendants' Truth in Lending Act disclosures were belated and incomplete. The claim that Mellon Bank's finance charges exceeded allowable limits under Pennsylvania's consumer protection law also raises a federal question.

## I.

The legislative purpose of the Truth in Lending Act is to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available" and to avoid the "uninformed use of credit." 15 U.S.C. § 1601(a). Pursuant to the Act, the Federal Reserve Board issued Regulation Z, 12 C.F.R. § 226.1 *et seq.,* 15 U.S.C. § 1604. For each transaction, the creditor is required to disclose the following information:

    (a) the identity of the creditor making the disclosures;

    (b) the "amount financed," using that term, and a brief description of the amount of credit provided to the consumer;

    (c) (1) a separate written itemization of the amount financed, including:

        (i) the amount of any proceeds distributed directly to the consumer,

        (ii) the amount credited to the consumer's account with the creditor,

        (iii) any amounts paid to other persons by the creditor on the consumer's behalf,

        (iv) the prepaid finance charge;

    (2) the creditor need not comply with (c)(1) if the creditor provides a statement that the consumer has the right to receive a written itemization of the amount financed, together with a space for the consumer to indicate whether it is desired, and the consumer does not request it;

    (d) the "finance charge," using that term, and a brief description such as "the dollar amount the credit will cost you;"

    (e) the "annual percentage rate," using that term, and a brief description such as "the cost of your credit as a yearly rate;"

    (f) the variable rate if applicable;

    (g) the payment schedule;

    (h) the total of payments;

    (i) the demand feature if it exists;

    (j) total sale price;

    (k) conditions of prepayment;

    (*l*) late payment penalties;

    (m) security interest;

    (n) insurance;

    (o) certain security interest charges;

    (p) contract reference;

    (q) assumption policy;

    (r) the required deposit.

12 C.F.R. § 226.18 (1995).

■ As a remedial statute, TILA is "designed to aid unsophisticated consumers, so that consumers are not easily misled as to the total costs of financing." *In re Wright,* 133 B.R. 704, 707 (Bankr.E.D.Pa.1991). The Act should be construed liberally to ensure achievement of this goal. *Johnson v. McCrackin–Sturman Ford, Inc.,* 527 F.2d

---

**4.** The amount of the fee depends on whether H & R Block prepared the customer's tax return. Defendant H & R Block's motion for summary judgment at 4.

**5.** Plaintiffs filed a motion for class certification, which was denied without prejudice. Order, April 12, 1995.

257, 262 (3d Cir.1975). TILA enforcement is through a system of "strict liability in favor of consumers." *Thomka v. A.Z. Chevrolet, Inc.,* 619 F.2d 246, 248 (3d Cir.1980). *See also, In re Steinbrecher,* 110 B.R. 155, 161 (Bankr.E.D.Pa.1990).

## A.

■ Under the Truth in Lending Act the required disclosures must be made "before credit is extended." 15 U.S.C. § 1638(b)(1). Section 226.17(b) of Regulation Z necessitates "disclosures before consummation of the transaction." Consummation is "the time that a consumer becomes contractually obligated," as determined by state law. 12 C.F.R. § 226.2(a)(13) and (b)(3) (1995).

Here, H & R Block's customers were initially asked to complete a Refund Anticipation Loan application.[6] The application was forwarded to Mellon Bank's offices for a loan decision. Upon approval, a Mellon Bank cashier's check would be sent back within two to three days to the originating H & R Block office. The loan agreement appears on the back of the check, and the TILA disclosures are attached to the check stub.

In plaintiffs' view the loan was consummated upon completion of the loan application, the rest of the transaction being "purely ministerial." Response to motion for summary judgment at 16. As for defendants, consummation occurs when the taxpayer signs the loan agreement attached to the proceeds check.

"There is very little case law directly discussing consummation." *In re Jones,* 91 B.R. 725, 729 (Bankr.W.D.Pa.1988), *rev'd on other grounds, In re Jones,* 122 B.R. 246 (W.D.Pa.1990). Under Pennsylvania law, a party becomes contractually obligated on a transaction if "the parties agree on essential terms and intend them to be mutually binding." *Compu Forms Control, Inc. v. Altus Group, Inc.,* 393 Pa.Super. 294, 305, 574 A.2d 618, 624 (1990).[7] Disclosure as part of a mortgage loan settlement has been held adequate under TILA. *Stavrides v. Mellon Nat'l Bank and Trust Company,* 353 F.Supp. 1072 (W.D.Pa.), *aff'd,* 487 F.2d 953 (3d Cir. 1973).[8]

Here, the TILA disclosures were made before the loan agreements were signed and the loan was "closed." Under the general rule of *Compu Forms,* neither party was bound before the signing of the loan agreement. The customer received the refund anticipation loan proceeds only after the check and agreement were signed. The loan agreement recites that execution of the loan is what obligates the customer to repay the loan amount to Mellon Bank. Defendant Mellon Bank's motion for summary judgment, exhibit E. Moreover, "the loan application signed by [plaintiff] does not commit [the customer].... It states that it is being submitted 'for the purpose of enabling [Mellon Bank] to determine whether or not to make a RAL' to the applicant." *Cades v. H & R Block, Inc.,* 43 F.3d 869, 876 (4th Cir. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995).

Plaintiffs invoke the spirit and general principles of the Truth in Lending Act. Response to motion for summary judgment at 15, 22. They suggest that disclosures should be made at the application stage when most customers make their decision to use the RAL service.[9] Early disclosure would obviously comport with the intendment of the Act. However, the "broad language of

---

6. For the years 1990–1993, the application was entitled "Refund Anticipation Loan Request and Supplemental Loan Agreement." In 1989 the application was entitled "Rapid Refund Application." Response to motion for summary judgment at 4 and n. 7.

7. *Compu Forms* involves formation of a contract, not consummation of a loan under TILA.

8. Plaintiffs argue *Stavrides* applies only to mortgage loans—transactions that have an official "closing session." Response to motion for summary judgment at 17. However, the Truth in Lending Act and governing regulations do not alter disclosure requirements based on the type of loan. *See, e.g.,* 15 U.S.C. § 1638; 15 U.S.C. § 1639.

9. Edward B. Feinstein, assistant vice president and director of Field Automated Systems of H & R Block Tax Services, Inc. and H & R Block Eastern Tax Services, Inc., conceded that most customers decide to purchase the rapid refund service at the application stage. Response to motion for summary judgment, exhibit 7 at 13.

§ 1601 which sets out the purpose of the Act cannot be used to overrule the more specific language." *Stavrides,* 353 F.Supp. at 1079. The Fourth Circuit Court of Appeals, in affirming dismissal of a TILA claim against H & R Block in a virtually identical case, refused to find that "the broad purpose of the Act should override its specific provisions." *Cades,* 43 F.3d at 876. The same check and check stub disclosures were held to satisfy TILA's explicit timeliness requirements. *Accord Beckett v. H & R Block, Inc.,* 1994 WL 698505 (N.D.Ill.), *appeal docketed,* No. 95–1391 (7th Cir.) (disclosures given at the same time as loan agreement and check were timely).

## B.

■ Completeness of the disclosures is also at issue.[10] In particular, plaintiffs claim that "the RAL agreement did not contain a statement that the consumer had a right to receive a written itemization of the amount financed, nor did it contain a space for the consumer to indicate whether such an itemization was desired as Regulation Z requires." Response to motion for summary judgment at 13. However, under section 226.18(c)(2) of the Code of Federal Regulations, once the creditor complies with paragraph (c)(1), a statement of the consumer's right to receive a written itemization is unnecessary. Here, the strictures of (c)(1) were met. Defendant Mellon Bank's motion for summary judgment, exhibits D, E.

■ According to plaintiffs, the electronic filing fee should be considered a part of the finance charge and APR[11] calculations. Response to motion for summary judgment at 23.[12] Under TILA, the finance charge is defined as "the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the

creditor as an incident to or a condition of the extension of credit." 12 C.F.R. § 226.4(a) (1995). TILA regulations do not require inclusion of a fee as a finance charge where the fee is "of a type payable in a comparable cash transaction." *Id.*

The electronic filing fee is a charge "required" by Mellon Bank in connection with the loan. Sur-reply to motion for summary judgment at 8. However, H & R Block offers an independent electronic filing service for the same fee—$25—as for the loan service. Defendant H & R Block's motion for summary judgment, exhibit A ¶ 5. So viewed, the electronic filing fee is a charge "of the type payable in a comparable cash transaction" and is not an element of the finance charge. 12 C.F.R. Pt. 226, Supp. I at 303 (1995) ("§ 226.4(a) expressly excludes from the finance charge amounts payable in comparable cash transactions . . . the general test for a finance charge now focuses on a comparison of cash and credit transactions.")

## II.

■ The amended complaint further alleges a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Act, 73 Pa.C.S.A. § 201–2(4). Specifically, plaintiffs contest the annual percentage rate charged by Mellon Bank. Amended complaint ¶ 60; response to motion for summary judgment at 43. Defendants claim federal jurisdiction over this issue by virtue of preemption under the National Bank Act, 12 U.S.C. § 85.

■ "It is well settled that, 'since Congress has provided a penalty for usury, that action preempts the field and leaves no room for varying state penalties.' " *M. Nahas & Co., Inc. v. First Nat'l Bank of Hot Springs,* 930 F.2d 608, 610 (8th Cir.1991) (citations omitted).[13] "The interest rate a national

---

**10.** Plaintiffs assert that the 1991, 1992 and 1993 applications of plaintiff Clavin were not complete and that her 1993 application failed to state the finance charge assessed. Response to motion for summary judgment at 13–14. These objections need not be discussed given the conclusion that the disclosures were not required until the loan check agreement was signed. *See infra* part I. A.

**11.** The APR is calculated based on the finance charge. 12 U.S.C. § 1606.

**12.** This issue was first raised in response to the summary judgment motions.

**13.** *Irwin v. Citibank (South Dakota), N.A.,* 26 Phila. 388, 392 (Dec. 3, 1993), *aff'd sub nom In re Citibank (South Dakota) Credit Card Litigation,*

bank may charge is governed by section 85, which looks to the interest rates allowed by the state where the bank is located." *Cades v. H & R Block,* 43 F.3d 869, 874 (4th Cir. 1994). That state's law controls the rate the national bank can charge in all states. *Marquette v. First of Omaha Serv. Corp.,* 439 U.S. 299, 308, 99 S.Ct. 540, 545, 58 L.Ed.2d 534 (1978).

Mellon, a national bank, is governed by the National Bank Act. Defendant Mellon Bank's motion for summary judgment at 32; amended complaint ¶ 7. Inasmuch as plaintiffs' unfair trade practices claim arises from the bank's interest rate charges, it is preempted by the National Bank Act. *See Cades v. H & R Block,* No. 4:92–1454–21, 1993 U.S.Dist. Lexis 19041 at *18 n. 16 (D.S.C. July 16, 1993).

■ Mellon is located in Delaware. Under Delaware law governing closed-end transactions, a bank may charge "loan fees, points, finders fees and other front-end and periodic charges; provided ... that the agreement governing ... the loan so provides." Del.Code Ann. tit. 5, § 965 (1975). Here, since the loan documents expressly refer to collection of the $29 bank fee, the finance charge amount does not violate Delaware or federal law. *See Cades,* 43 F.3d at 874 (in similar fact situation $29 finance charge found valid under Delaware law).

■ This memorandum and previously entered order dispose of all federal matters in the complaint. Jurisdiction over the remaining state claims has been declined, *see United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Ditri v. Coldwell Banker Residential Affiliates, Inc.,* 954 F.2d 869, 874 (3d Cir.1992);[14] and remand ordered.

439 Pa.Super. 79, 653 A.2d 39 (1995), cited by plaintiffs, pertains to credit card fees, not interest charges.

**14.** Defendants object to remand of the case on the ground that removal occurred over two years ago, followed by considerable discovery and the pendency of the present motions. However, there is no compelling reason why federal jurisdiction should be retained, and the discovery is readily available for use in state proceedings.