52 A.3d 1202

Sandra BASILE, on Behalf of herself and all others similarly situated, Appellees

v.

H & R BLOCK, INC. and H & R Block Eastern Tax Services, Inc., Appellants.

Supreme Court of Pennsylvania.

Argued May 8, 2012.

Decided Sept. 7, 2012.

John J. Cunningham IV, William H. Lamb, Maureen Murphy McBride, James C. Sargent Jr., Lamb McErlane PC, West Chester, for H & R Block, Inc., and H & R Block Eastern Tax Services, Inc.

Steven E. Angstreich, Carolyn Chernick Lindheim, Weir & Partners, L.L.P., Philadelphia, for Sandra Basile, on behalf of herself and all others similarly situated.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## OPINION

Justice SAYLOR.

This appeal concerns a class action premised upon alleged breaches of fiduciary duties. At issue is whether the common pleas court appropriately decertified the class based on its conclusion that a necessary element of the plaintiffs' proof—the presence of a confidential relationship—was not amenable to class treatment.

The case has a lengthy, circuitous history. Pertinent aspects of the background are as follows.

In 1993, Sandra J. Basile commenced a civil action against H & R Block, Inc., H & R Block Eastern Tax Services, Inc. (collectively, the "Block companies" or "Block"), and Mellon Bank. Ms. Basile alleged, among other things, that the Block companies maintained and breached fiduciary duties in connection with their "Rapid Refund" program.[1] This program allowed customers to receive the amount of their income tax refund within days after electronically filing their income tax return via a short-term bank loan, termed "refund anticipation loans." Although the program was apparently a profitable one, it raised concerns on the part of various regulators and spawned a number of civil actions nationwide. *See, e.g., Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 280 (7th Cir.2002) (observing that, beginning in 1990, more than twenty class actions were brought against Block and others, charging violations of state and federal consumer-finance laws and breaches of fiduciary duty under state law). In the present one, Ms. Basile asserted that the program was deceptive, because, while customers may have understood that payment

---

1. In federal court, Ms. Basile and a putative class also alleged violations of the Truth–in–Lending Act, 15 U.S.C. §§ 1601, *et seq.*, the Delaware usury laws, Del.Code tit. 6 § 2301(a) (1975), and the Pennsylvania Unfair Trade Practices and Consumer Protection Act, 73 Pa.S.A. § 201–2(4). *See Basile v. H & R Block, Inc.*, 897 F.Supp. 194 (E.D.Pa.1995). The plaintiffs suffered an adverse judgment there, however, and did not appeal this ruling. *See Basile v. H & R Block, Inc.*, No. 3246 Apr. Term 1993, *slip op.*, 1997 WL 1433757, at *11 (C.P.Phila., May 30, 1997) (summarizing the path of the present litigation through the federal and state court systems through 1997).

of a fee was required, they did not apprehend that they actually received a loan, and they did not know the high rate of interest imposed. *See id.* (explaining that the annual interest rate on a refund anticipation loan "will often exceed 100 percent—easily a quarter of the refund, even though the loan may be outstanding for only a few days"). Ms. Basile sought to assert claims on behalf of herself and others who were similarly situated.

In 1997, on Ms. Basile's motion, the common pleas court certified a class consisting of some 600,000 of the Block companies' customers who participated in the refund anticipation loan program between 1990 and 1993 ("Appellees"), relative to the breach of fiduciary duty claim.[2] However, summary judgment subsequently was awarded in Block's favor on the ground that it had no fiduciary relationship with the plaintiffs. The common pleas court's conclusion, in this respect, was based on the premises that Block was not the plaintiffs' agent and that no confidential relationship otherwise existed between the parties. In the ensuing appellate litigation, the court's decision on the agency score ultimately was conclusively sustained. *See Basile v. H & R Block, Inc.,* 563 Pa. 359, 370, 761 A.2d 1115, 1121 (2000) ("[W]e hold that, as a matter of law, Block was not acting as appellees' agent in the [refund anticipation loan] transactions, such that they were subject to a heightened, fiduciary duty.").

The question whether Appellees could proceed as a class on the general theory of a confidential relationship, however, remained in continuing controversy. In 2001, the Superior Court overturned the common pleas court's summary-judgment award, finding that Ms. Basile had proffered sufficient evidence to establish a *prima facie* case of a confidential relationship. *See Basile v. H & R Block, Inc.,* 777 A.2d 95, 106–07 (Pa.Super.2001), *appeal denied,* 569 Pa. 714, 806 A.2d 857 (2002) (*per curiam*). In laying the foundation for its

---

**2.** Certification was refused relative to other claims asserted in the state court action, including common law fraud and negligent misrepresentation. *See Basile,* No. 3246 Apr. Term 1993, *slip op.,* 1997 WL 1433757, at *77.

decision, the intermediate court reviewed a number of prior decisions concerning confidential relationships to discern several guiding principles. First, the court observed, the conception is not amenable to a precise definition. *See id.* at 101 (explaining that "a confidential relationship cannot be reduced to a catalogue of specific circumstances, invariably falling to the left or right of a definitional line" (quoting *In re Estate of Scott,* 455 Pa. 429, 432, 316 A.2d 883, 885 (1974))). Nevertheless, the court continued, "[t]he essence of such a relationship is trust and reliance on one side, and a corresponding opportunity to abuse that trust for personal gain on the other." *Id.*

The Superior Court then quoted the following description deriving from *Leedom v. Palmer,* 274 Pa. 22, 117 A. 410 (1922):

[A confidential relationship] appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence, *or,* on the other, weakness, dependence or trust, justifiably reposed; in both an unfair advantage is possible.

*Id.* at 25, 117 A. at 411 (emphasis added). The court stressed that this passage is phrased in the disjunctive and criticized the common pleas court for treating proof of weakness, dependence, or trust on Appellees' part as an essential prerequisite. *See Basile,* 777 A.2d at 101, 103.

In support of its decision, the intermediate court catalogued evidence proffered by Appellees—particularly documents obtained from the Block companies in discovery—indicating that: the Block companies actively cultivated customer trust through an extensive media ad campaign; Block appreciated that many of its customers "entered their relationships with Block in a position of pronounced economic and intellectual weakness"; and, despite reports of customer confusion, the Block companies intentionally provided only minimal information concerning the character of refund anticipation loans. *See Basile,* 777 A.2d at 103–06. Although the Superior Court at times discussed Ms. Basile's individual circumstances, a portion of its reasoning concerned the class as a whole. For instance, the court stated:

Though Block, per force, could not establish a personal relationship with any member of the class, it sought nonetheless to achieve a false intimacy through carefully orchestrated advertising images. . . . Were we to apply our caselaw in the manner Block suggests, requiring some level of personal intimacy for the formation of a confidential relationship, we would effectively elevate the economic concerns of the mass market above the mandate of the law. Such a decision would allow vast numbers of our more credulous citizens to suffer harm that we would repudiate if inflicted on an isolated basis by an individual.

*Id.* at 107.

Despite such broad-scale commentary, however, the Superior Court couched its actual holding narrowly, explaining:

We do not conclude that the relationship of a tax consultant to his client is confidential *per se,* nor do we conclude that the parties here were engaged in such a relationship as a matter of law. We conclude only that the evidence before the trial court on summary judgment was sufficient to establish, *prima facie,* the elements of a confidential relationship between the parties in this case. If, upon remand, the factfinder accepts, as truthful, evidence adduced tending to demonstrate a confidential relationship, Block will be bound by a corresponding fiduciary duty as a matter of law.

*Id.*

In 2003, upon consideration of the appellate rulings, the common pleas court determined that class treatment was no longer appropriate. In support of this decision, the court explained that "it will be necessary to consider the evidence of the unique qualities of each class member since the fact finder must determine whether each place[d] his or her complete trust in the defendant's expertise." *Basile v. H & R Block, Inc.,* 66 Pa. D. & C.4th 57, 66 (C.P.Phila.2004). The common pleas court found that the need for individualized inquiries on the dispositive question of trust precluded a finding that common issues predominated. *Id.* at 11–12. Given that such predominance is a prerequisite to class treatment, *see Samu-*

*el–Bassett v. Kia Motors Am., Inc.*, 613 Pa. 371, 407–09, 34 A.3d 1, 22–23 (2011) ("The critical inquiry for the certifying court is whether the material facts and issues of law are substantially the same for all class members."),[3] the court entered a decertification order.

The Superior Court reversed, however. *See Basile v. H & R Block, Inc.*, 11 A.3d 992 (Pa.Super.2010).[4] In doing so, the intermediate court emphasized its 2001 holding that proof of complete trust on the part of each class member was not essential to establish a confidential relationship, and that Appellees had proffered sufficient evidence to create a jury question. *See id.* at 995 (citing *Basile*, 777 A.2d at 95). According to the court:

> If the finder of fact [at trial] decides that [this evidence is] truthful and persuasive, then it will not be necessary for the finder of fact to "consider the unique qualities of each class member" in order to establish a confidential relationship with Block—as [this evidence] reflect[s] that Block *knew* that the Plaintiff Class "sought Block's assistance from a position of pronounced intellectual and economic weakness."

3. *See generally Liss & Marion P.C. v. Recordex Acquisition Corp.*, 603 Pa. 198, 217–18, 983 A.2d 652, 663 (2009) (indicating that the requirement of class certification that there exist a common question of fact means that the facts must be substantially the same so that proof as to one claimant would be proof as to all); *Sharkus v. Blue Cross of Greater Phila.*, 494 Pa. 336, 343, 431 A.2d 883, 886 (1981) (explaining that "an essential requirement for maintaining a class action is the existence and predominance of common issues shared by *all* class members which can be justly resolved in a single proceeding." (emphasis added)).

4. The interlocutory appellate review proceeded under the collateral order doctrine. *See Basile v. H & R Block, Inc.*, 894 A.2d 786, 789 n. 1 (Pa.Super.2006), *rev'd on other grounds*, 601 Pa. 392, 973 A.2d 417 (2009). The Superior Court maintains that orders denying certification, or decertifying a class action, are immediately appealable as collateral orders. *See, e.g., Clark v. Pfizer Inc.*, 990 A.2d 17, 23 n. 3 (Pa.Super.2010). As recognized in *Rae v. Pennsylvania Funeral Directors Association*, 602 Pa. 65, 977 A.2d 1121 (2009), however, the United States Supreme Court has taken a different view. *See id.* at 72, 977 A.2d at 1125–26 (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)). The limited grant of allocatur in this case does not encompass the question of whether the decertification order qualifies for as-of-right interlocutory appellate review.

Moreover, these same Block documents, if believed, similarly establish that Block not only encouraged the members of the Plaintiff Class to trust in their expertise, but also that those efforts were in fact successful.

*    *    *

As is now clear, Basile intends to attempt to meet her burden of proof in this regard on a class-wide basis through common proof as to all class members, namely the presentation of a significant quantum of evidence, in the form of Block's own internal documents, establishing the relative positions of the parties and the repose of complete trust in Block by members of the class.

*Basile,* 11 A.3d at 999–1000 (quoting *Basile,* 777 A.2d at 106) (emphasis in original). Accordingly, the Superior Court overturned the class decertification order and remanded the case to the common pleas court for further proceedings. On the petition of the Block companies, this Court allowed appeal to consider the correctness of the intermediate court's ruling.

Presently, Block's primary argument is that the determination whether a confidential relationship is present (in the absence of a legal relationship which presumes one) requires a uniquely individualized, factual assessment. *Accord Wisniski v. Brown & Brown Ins. Co. of PA.,* 906 A.2d 571, 578 (Pa.Super.2006) ("The question of whether or not a confidential relationship exists between the parties is intensely fact-specific."). Since the presence of a confidential relationship is a core element of the extant claims asserted on behalf of each of the 600,000 individual class members, Block contends that the common pleas court simply could not have been wrong in determining that class treatment of those claims is inappropriate. Whatever the Block companies' marketing and customer relations strategies,[5] Block asserts that—given the myriad intellectual and personality differences among the 600,000

5. Block does not concede that the evidence of those practices referenced by the Superior Court, or the attendant inferences it drew, are accurate. Block highlights that the evidence was in the form of a proffer by the plaintiffs at the summary judgment stage and was never reviewed or credited by the common pleas court in connection with the class certification decision.

class members—the impact of those practices upon discrete individuals inevitably will have been disparate. Block elaborates as follows:

> [T]he [Superior Court's] finding of "overmastering" influence is inconsistent with its observation that [courts must consider] the "relative positions of the parties," *Basile*, 11 A.3d at 1000, which, in turn, necessitates an individualized inquiry. While in this case, the Panel *presumed* all class members were "overmastered" based solely on their predominant socio-economic level, such demographic information obviously does not directly correlate to the capacity of individual members to be overmastered, or, conversely, the strength of their independent judgment. Here, Plaintiffs did not establish what percentage of the class was comprised of inhabitants of urban centers and rural areas, persons who did not complete high school, as well as high school and college graduates, those who are impoverished fortuitously and those who are of modest means by choice or avocation, or persons with some financial acumen versus those without any. Because each of these characteristics, and a multitude of others, will weigh in on whether each class member is more or less susceptible to solicitations or advertisements, [the common pleas court] correctly recognized that "... it will be necessary to consider the evidence of the unique qualities of each class member since the fact finder must determine whether each placed his or her complete trust in the defendant's expertise."

Brief for Appellants at 29–30 (emphasis in original); *see also id.* at 30 ("The possibility that a class of 600,000 people were *potentially* reached by Block's advertisements does [not] justify the conclusion that the entire class *was* reached[,] reacted identically, suspended independent judgment, and collectively placed its complete trust in Block." (emphasis in original)). According to Block, the Superior Court's opinion glaringly disregards the plainly individualized nature of the central inquiry.

Block views the Superior Court's reliance on its 2001 decision overturning the award of summary judgment as another

compelling manifestation of the weakness of that court's 2010 opinion disapproving decertification. In this regard, Block observes that summary judgment rulings are made and reviewed based on proffered facts viewed in the light· most favorable to the non-moving party. *See, e.g., Wilson v. El–Daief,* 600 Pa. 161, 170–71, 964 A.2d 354, 359 (2009). Class certification rulings, on the other hand, are premised upon actual factual determinations (where material factual matters are in dispute). *See* Pa.R.Civ.P. No. 1710.[6] In the Block companies' view, it was wholly inappropriate for the intermediate court to require ongoing class treatment—over and against the common pleas court's determination that such treatment was unwarranted—based upon mere factual assertions and proffers. *See, e.g.,* Brief for Appellants at 25 ("The Panel neither recognized that its own standard of review was entirely different than the standard applied in [the 2001 review of the summary judgment order], nor acknowledged that the 'evidence' cited in [such review] did not have the same currency in the class certification context, where it had to be evaluated for its actual probative value classwide and not merely considered in the light most favorable to the named Plaintiff.").

Block also explains that courts of original jurisdiction are vested with broad discretion in determining whether the criteria for maintaining a class are met. *See Samuel–Bassett,* 613 Pa. at 396, 34 A.3d at 15. Further, Block points to the high threshold an appellant must meet to warrant reversal of such a discretionary ruling. *See id.* ("[T]he trial court must have 'exercised unreasonable judgment, or based its decision on ill will, bias, or prejudice.' ") (quoting *In re Community Bank of N. Va.,* 622 F.3d 275, 290 (3d Cir.2010)). According to the Block companies, the Superior Court failed to extend appropriate deference to the common pleas court's discretionary

6. The material facts, at the class certification stage, of course, concern the criteria necessary to class treatment and not the merits of the underlying controversy, *see* Pa.R.Civ.P. No. 1707, Explanatory Comment—1977, albeit we recognize that there may be some degree of overlap, *see Livesay,* 437 U.S. at 469, 98 S.Ct. at 2458 (citing *Mercantile Nat'l Bank v. Langdeau,* 371 U.S. 555, 558, 83 S.Ct. 520, 522, 9 L.Ed.2d 523 (1963)).

decertification decision, but, rather, substituted its own judgment for that of the county court.

Appellees, for their part, regard the cited marketing strategies and customer-relations practices as compelling proof of overmastering influence on the part of the Block companies. *See, e.g.,* Brief for Appellees at 13 ("[T]he evidence presented by Plaintiffs as found by the Superior Court made out, prima facie, the existence of a confidential relationship based upon Block's overmastering influence."). Appellees explain their position in terms similar to those employed by the Superior Court:

> Here, the evidence against Block established through the testimony of its employees, manuals, advertising materials, letters to its clients, its marketing data and its focus group studies, that Block cultivated its specialized expertise in tax matters so that its clients would depend on, confide in and trust Block. It knew the demographics of its clients—that they had annual incomes of $10,000–$15,000 were either unemployed or worked in service occupations and possessed less than a high school education. Further, ... Block explicitly trained (as described in its Tax Preparer Manual) its tax preparers to avoid explaining the Rapid Refund program beyond letting the client know when the check would be ready and that the fee would be deducted so the client did not have to go out of pocket for the service. And, Block trained the tax preparer in this manner because it knew that if the client learned that the Rapid Refund was not a refund but a high interest loan, many would decline the program. Block had a conscious plan to target the class to take advantage of them. The evidence is overwhelming in favor of certification.

Brief for Appellees at 16.

Appellees also differ with Block's position that the Superior Court conflated the summary judgment standard with the class certification analysis. In their view, the intermediate court merely referenced the summary judgment opinion in conducting an independent review and determining that the record did not support the decertification order.

■ On considering the background and the arguments, we agree with several primary lines of the Block companies' contentions. First, determining the appropriateness of class treatment is an inherently fact-laden inquiry. *See generally Samuel–Bassett*, 613 Pa. at 396, 34 A.3d at 15 (observing that class certification is treated as a mixed question of law and fact). As Block amply develops, where material facts are in dispute, class certification—and decertification—rulings are to be premised on properly determined facts, not assumed ones. *See* Pa.R.Civ.P. No. 1710; *see also supra* note 6. Hence, the Superior Court plainly should not have relied on factual assertions which previously were taken as true only when considered for a very different purpose (*i.e.*, evaluating whether the claims were amenable to summary disposition).

Sanctioning such an intermixing of summary-judgment and class-certification review principles would have the deleterious consequence of postponing to the time of trial the determination of whether collectivized treatment is appropriate. *See, e.g., Basile*, 11 A.3d at 999 ("*If the finder of fact [at trial] decides that [this evidence is] truthful and persuasive*, then it will not be necessary for the finder of fact to 'consider the unique qualities of each class member'...." (quoting *Basile*, 777 A.2d at 106) (emphasis added)). Such delay is particularly untenable, given that class certification decisions serve as critical milestones in the tracking, management, and handling of mass claims. For this reason, deferring close consideration of class certification to the time when facts are determined by a jury at trial (namely, in connection with the verdict) is incompatible with the governing procedural rules. *See, e.g.,* Pa.R.Civ.P. No. 1710 (reflecting that decisions concerning class treatment are to be based on judicial determinations of the facts pertinent to class treatment). Furthermore, the approach would conflate a management decision appropriate to trial judges with merits determinations relegated to juries.

■ Despite the Superior Court's departure from the governing review principles, there is some visceral force to its conclusions, particularly since much of the evidence upon which the court relied consisted of the Block companies' own

internal papers. Even if the substance of those documents is taken as true, however, it is not appropriate to presume that Block's marketing and customer relations strategies had the same impact on each and every putative class member. While Block may very well have desired to assert strong influence in the marketplace, and it may have possessed information reflecting vulnerability across a wide segment of its clientele, nothing in the record presented demonstrates an actual, class-wide, homogeneous effect on 600,000 of Block's customers in the nature of "overmastering influence." In other words, the Superior Court's decision fails to account for the inherently discrete and subjective aspects of marketing and customer-relations impact.

An analogous point was ably made by a federal district court considering a putative class action relative to the Block companies' Rapid Refund program, as follows:

> In this class, there are millions of people—any of whom may or may not have known that this product was a loan. The class members, having paid the charges before assuming the loan, knew the costs of the loan and, indeed, the class representatives found the charge acceptable. Whether the advertising scheme and use of the term "Rapid Refund" induced any of these class members to believe that this was simply a refund fee rather than a high interest loan is, quite simply, a question which is individual to each class member. Additionally, the question of whether class members who were fully informed of the loan arrangement would have still taken the loan remains an individualized determination.
>
> *       *       *
>
> [T]his Court will not presume this lack of knowledge on the part of an entire class.

*Buford v. H & R Block, Inc.,* 168 F.R.D. 340, 360 (S.D.Ga. 1996) (citation omitted).

In terms of the Superior Court's understanding of "overmastering influence" in the context of a confidential relationship, we also find that the court made too much of the use of the disjunctive in the *Leedom* formulation. *See Leedom,* 274

Pa. at 25, 117 A. at 411 (explaining that a confidential relation-
ship "appears when the circumstances make it certain the
parties do not deal on equal terms, but, on the one side there
is an overmastering influence, *or*, on the other, weakness,
dependence, or trust, justifiably reposed; in both an unfair
advantage is possible" (emphasis added)). *Leedom* itself recog-
nized the difficulty in precisely defining a confidential relation-
ship, *see id.* ("No precise language can define the limits of
the relation[.]"); accordingly, it is unhelpful to sharply decon-
struct the generalized guidance it attempted to provide.
Moreover, the term "overmastering influence" itself implies a
relational aspect—particularly in terms of social phenomena
such as mass advertising, what may be couched as "overmas-
tering" as to one individual will not have the same impact on
others. Finally, the Court has maintained this relational focus
in other of its descriptions of a confidential relationship. *See,
e.g., Estate of Scott,* 455 Pa. at 432, 316 A.2d at 885 (explaining
that "[t]he essence of such a relationship is trust and reliance
on one side, and a corresponding opportunity to abuse that
trust for personal gain on the other"). Simply put, in the
absence of actual coercion, overmastering influence does not
exist in the abstract.

■ There are two primary ways of establishing a confiden-
tial relationship. The first is to demonstrate a legal relation
ordinarily known as confidential at law. *See Leedom,* 274 Pa.
at 25, 117 A. at 412 (explaining that a confidential relationship
"generally exists between trustee and cestui que trust, guard-
ian and ward, attorney and client, and principal and agent").[7]
Appellees attempted to do so on an agency theory, but a
majority of this Court rejected such theory. *See Basile,* 563
Pa. at 370, 761 A.2d at 1121.[8] In the absence of some

7. In Pennsylvania, accountant-client relationships have not been
   deemed to be *per se* confidential in the sense of generating attendant
   fiduciary duties. *See, e.g., Drob v. Jaffe,* 351 Pa. 297, 300, 41 A.2d 407,
   408 (1945); *accord Basile,* 777 A.2d at 107 ("We do not conclude that
   the relationship of a tax consultant to his client is confidential *per se,*
   nor do we conclude that the parties here were engaged in such a
   relationship as a matter of law.").

8. This author and Mr. Justice Nigro, however, would have found
   agency status and attendant fiduciary duties present as a matter of law.

affiliation pursuant to which a confidential relationship is legally presumed, Appellees were relegated to the alternative, fact-dependent method of proving such a relationship. *See generally Leedom,* 274 Pa. at 25, 117 A. at 412 ("In some cases the confidential relation is a conclusion of law, in others it is a question of fact to be established by the evidence[.]"). Again, the Superior Court otherwise has correctly recognized the "intensely fact-specific" nature of this inquiry. *See Wisniski,* 906 A.2d at 578; *accord Estate of Scott,* 455 Pa. at 432, 316 A.2d at 885 (explaining that "each case must be analyzed on its own facts"). The court should have recognized this in the present case as well in its administration of the deferential appellate review required of the common pleas court's discretionary class certification ruling. *Accord Stratton v. Am. Med. Sec., Inc.,* 266 F.R.D. 340, 352–53 (D.Ariz.2009) (explaining that where the existence of a confidential relationship is a question of fact, "in cases involving allegations of fiduciary duty that arise out of the facts of a specific relationship, the claim is not well-suited to a class action").[9]

Certainly, high-interest refund anticipation loan programs have engendered intense criticism from consumer advocates and others who observe a disparate and deleterious impact on those with limited means. *See, e.g.,* Lynn Drysdale & Kathleen E. Keest, *The Two–Tiered Consumer Financial Services Marketplace: The Fringe Banking System and its Challenge to Current Thinking About the Role of Usury Laws in Today's Society,* 51 S.C. L.REV. 589, 668–69 (2000). Indeed, there very well may be a need for enhanced consumer protection laws to regulate the practice to the extent that it persists. The proper judicial response, however, is not to retroactively alter the procedural class action device or governing principles

*See Basile,* 563 Pa. at 373–76, 761 A.2d at 1123–25 (Nigro, J., dissenting); *id.* at 376–77, 761 A.2d at 1125 (Saylor, J., dissenting).

9.   We also observe that this Court also has cabined the application of the confidential-relationship concept by indicating the necessity of a substantial quantum of proof. *See Leedom,* 274 Pa. at 26, 117 A. at 412 ("Where undue influence and incompetency do not appear, and the relation between the parties is not one ordinarily known as confidential in law, the evidence to sustain a confidential relation must be certain[.]").

of appellate review to achieve such substantive ends. *See generally* Pa.R.Civ.P. Class Actions, Explanatory Comment— 1977 ("Many desirable approaches to class action problems involve substantive rather than procedural solutions.... These are beyond the power of the Procedural Rules.").

We are cognizant of the tendency toward sanctioning the use of class actions as a convenience to address colorably meritorious claims in an aggregate fashion, where these might not otherwise be capable of being redressed practically on an individualized basis. *Cf.* Allan Erbsen, *From "Predominance" to "Resolvability": A New Approach to Regulating Class Actions,* 58 VAND. L.REV. 995, 1009–10 (2005) ("The practical problems with certifying class actions despite dissimilarity among claims arise from the natural human instinct to simplify the inherently complex and to create order out of what appears chaotic."). We also do not discount the Superior Court's concern with the impact of mass marketing and fringe banking practices on the financially disadvantaged. The present approach to class action treatment reflected in the Pennsylvania Rules of Civil Procedure, however, stems from limitations inherent in the judicial rulemaking process, *see* Pa. R.Civ.P. Class Actions, Explanatory Comment—1977; the impact of collectivized treatment of individualized claims on defendants' substantive rights, *see generally* Erbsen, *From "Predominance" to "Resolvability,"* 58 VAND. L.REV. 995, 1010 (explaining that "aggregating distinct individual claims into a class obscures differences among class members in ways that engender substantive consequences"); and the limited policymaking role of the courts (as compared with the legislative branch) in terms of manipulating substantive law, *see, e.g., Naylor v. Twp. of Hellam,* 565 Pa. 397, 408, 773 A.2d 770, 777 (2001) (recognizing the General Assembly's superior ability to examine social policy issues and to establish appropriate substantive legal standards).[10]

10. As the common pleas court explained, the judicial opinions regarding Appellees' entitlement to proceed as a class are "not an acceptance or endorsement of the actions of H & R Block[;][t]he question in this case is not one of morality or business ethics, but rather one of law." *Basile,* No. 3246 April Term 1993, *slip op.* at 1.

We hold that the common pleas court did not err in decertifying the class based on its conclusion that a core element of the plaintiffs' proof—the presence of a confidential relationship—was not amenable to class treatment.

The order of the Superior Court is reversed, the common pleas court's decertification order is reinstated, and the matter is remanded for further proceedings consistent with this opinion.

Justice ORIE MELVIN did not participate in the decision of this case.

Chief Justice CASTILLE, Justices EAKIN, BAER, TODD and McCAFFERY join the opinion.