[J-102-2016] [MO: Donohue, J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## WESTERN DISTRICT

EUGENE R. YENCHI AND RUTH I.
YENCHI, HUSBAND AND WIFE,

            Appellees

            v.

AMERIPRISE FINANCIAL, INC.,
AMERIPRISE FINANCIAL SERVICES,
INC., RIVERSOURCE LIFE INSURANCE
COMPANY AND BRYAN GREGORY
HOLLAND,

            Appellants

:  No. 8 WAP 2016
:
:  Appeal from the Order of the Superior
:  Court entered September 15, 2015 at
:  No. 753 WDA 2014, vacating the
:  Judgment of the Court of Common
:  Pleas of Allegheny County entered May
:  5, 2014 at No. GD 01-006610, and
:  remanding.
:
:  ARGUED: November 1, 2016

## DISSENTING OPINION

**JUSTICE TODD**             **DECIDED: JUNE 20, 2017**

I dissent because, unlike the majority, I find there are sufficient indicators of a fiduciary relationship between the Yenchis and Appellants to allow the Yenchis to avoid summary judgment on their fiduciary duty claim. For the following reasons, I would affirm the Superior Court.

As the majority recognizes, outside of the context of fiduciary duties imposed as a matter of law, the existence of a confidential relationship is, first and foremost, a fact-driven inquiry. *See Basile v. H & R Block, Inc.*, 52 A.3d 1202, 1210 (Pa. 2012) (noting "the 'intensely fact-specific' nature of this inquiry"); *In re Estate of Scott*, 316 A.2d 883, 885 (Pa. 1974) ("The concept of a confidential relationship cannot be reduced to a catalogue of specific circumstances, invariably falling to the left or right of a definitional

line. . . . [E]ach case must be analyzed on its own facts."). Moreover, the majority cites the governing test which we have reiterated for finding a confidential relationship: "[A] confidential relationship 'appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed.'" Majority Opinion at 12 (quoting *Frowen v. Blank*, 425 A.2d 412, 416-17 (Pa. 1981)). However, in applying those principles, in my view, the majority gives insufficient heed to our admonition that "it is unhelpful to sharply deconstruct the generalized guidance [that definition] attempted to provide." *Basile*, 52 A.3d at 1210.

In this area, I would avoid reliance on singular and categorical requirements such as "overmastering influence," "cedes their decision-making authority", or "surrender[ing] substantial control." *See* Majority Opinion at 13, 14, 15, 17. Rather, as we did in *Basile*, I would emphasize the relational focus in discerning confidential relationships, which, in one formulation, is simply this: the "essence of such a relationship is trust and reliance on one side, and a corresponding opportunity to abuse that trust . . . on the other." *Basile*, 52 A.3d at 1210 (quoting *Estate of Scott*, 316 A.2d at 885) (internal quotation marks omitted); *see also Frowen*, 425 A.2d at 416 ("The general test for determining the existence of [a confidential] relationship is whether it is clear that the parties did not deal on equal terms;" it is "not confined to any specific association of the parties" (internal quotation marks omitted)); *Brooks v. Conston*, 51 A.2d 684, 688 (Pa. 1947) ("a confidential relationship is not limited to any particular association of parties but exists wherever one occupies toward another such a position of advisor or counsellor as reasonably to inspire confidence that he will act in good faith for the other's interest" (internal quotation marks omitted)); *Basile v. H & R Block, Inc.*, 777 A.2d 95, 103 (Pa. Super. 2001) ("The possibility of a confidential relationship cannot be excluded by a

concrete rule. So long as the requisite disparity is established between the parties' positions in the relationship, and the inferior party places primary trust in the other's counsel, a confidential relationship may be established."); *see generally* Deborah A. DeMott, *Breach of Fiduciary Duty: On Justifiable Expectations of Loyalty and Their Consequences*, 48 Ariz. L. Rev. 925, 936 (2006) ("The defining or determining criterion should be whether the plaintiff (or claimed beneficiary of a fiduciary duty) would be justified in expecting loyal conduct on the part of an actor and whether the actor's conduct contravened that expectation.").

Consistent with this view, I reject the majority's reliance on our statement in *Estate of Scott* that "a business transaction may be the basis of a confidential relationship *only if* one party surrenders substantial control over some portion of his affairs to the other." Majority Opinion at 17 (quoting *Estate of Scott,* 316 A.2d at 886) (emphasis added). This statement is arguably *dicta*[1] and, regardless, in my view, it is insufficiently flexible to govern the fact-driven nature of a fiduciary relationship analysis.

On the facts of this case, I conclude they present a closer question than does the majority and, as a result, that summary judgment was improper. I find it significant that, early in their relationship with Appellants, the Yenchis paid $350 for a "Financial

---

[1] In *Estate of Scott*, this Court addressed whether the relationship between a brother and sister was a confidential one, thereby allowing the sister to challenge the brother's obtaining of her signature to create a joint bank account while she was in the hospital. Although the brother defended his actions, in part, by noting that he had previously sold his sister's car and some of her stock at her request, there was no question of a *business* relationship between them. *See Estate of Scott,* 316 A.2d at 886. Thus, our imposition of a strict surrender-of-control requirement to prove a confidential relationship in business relations was entirely unnecessary to the disposition of that dispute *between siblings.* Moreover, it was in tension with the Court's earlier statement that "[t]he concept of a confidential relationship cannot be reduced to a catalogue of specific circumstances, invariably falling to the left or right of a definitional line." *Id.* at 885.

Management Proposal," which was prepared by Bryan Holland, identified on the cover of the proposal as an "American Express financial advisor", and, on the third-page "Important Message," identified as "your American Express financial advisor". Exhibit 1 to Deposition of Eugene Yenchi, 12/2/09 (R.R. at 296a). Except for the cover, each page of the proposal was marked "Confidential." *Id.* Critically, the recommendations in the proposal were the basis for the now-complained-of consolidation of the Yenchis' life insurance policies in 1996. In my view, the fact that the Yenchis paid for financial advice, independent of and prior to any decision to purchase life insurance products from Appellants, suggests that their relationship was not simply an arms-length one between customer and insurance agent, but that, for their money, they reasonably could have expected some measure of fidelity to their interests from their self-proclaimed "advisor."[2]

Moreover, there are other indicators of a confidential relationship. In their depositions, the Yenchis repeatedly indicated that they trusted Holland, and relied on his superior expertise. *See, e.g.,* Deposition of Eugene Yenchi, 12/2/09, at 29 (R.R. at 243a) ("Q: How is it that you decided where [your money] should be invested while it was at American Express? A: [Holland] advised me to go into that."); *id.* at 119 (R.R. at 265a) ("I trusted Bryan for doing it"); *id.* at 145 (R.R. at 272a) ("we trusted him that he knew the best"); Deposition of Ruth Yenchi, 12/2/09, at 37 (R.R. at 666a) ("Q: Did you ask any questions about it of anyone, either someone from American Express or anyone else? A: No. Bryan probably said something about it, but we had just figured that Bryan knew the insurance more than we did."); *id.* at 49 (R.R. at 669a) ("He was

---

[2] The majority seemingly discounts the solidity of Holland's advice, noting that he was a "captive" financial advisor. Majority Opinion at 17. However, I find nothing in the record to suggest that there were, or that the Yenchis understood there to be, advisory limitations on Holland because of his employment.

telling me basically what was on the pages, and he was my advisor and I took his word."). At the relevant times, they stated he was the only financial advisor they ever spoke with. *See, e.g.*, Deposition of Eugene Yenchi, 12/2/09, at 56 (R.R. at 249a); Deposition of Ruth Yenchi, 12/2/09, at 37 (R.R. at 666a). Finally, they testified that they signed documents prepared by Holland without reviewing them. *See, e.g.*, Deposition of Ruth Yenchi, 12/2/09, at 41 (R.R. at 667a) ("Q: Would you have read this before you signed it? A: Well, Bryan would have probably said this is to say that you got your policy and then he would say you can sign it right here . . . . That's the way most of it was done."); *id.* at 49 (R.R. at 669a) ("He was telling me basically what was on the pages, and he was my advisor and I took his word.").

Nevertheless, I recognize there are countervailing indicators as well. In particular, the Yenchis never testified that the fee-based proposal was the basis for their trust in Holland or Appellants, or that Holland ever stated that he was acting in their best interests. Moreover, it appears that their trust in him had its limits, given that, as noted by the majority, they declined to follow his advice at times. *See* Majority Opinion at 3, 17. But, in my view, these conflicting indicators only highlight the factual dispute concerning the existence of a fiduciary relationship. Finally, while I recognize that we have not heretofore found a confidential relationship in a comparable consumer context, I eschew categorical limitations and maintain that our focus should remain on the fact-intensive nature of the inquiry. Accordingly, because I conclude there are outstanding material factual disputes and that summary judgment was inappropriate as a matter of law, I agree with the Superior Court that the trial court's order granting summary judgment to Appellants on their fiduciary duty claim should be reversed.

For these reasons, I would affirm the order below.

Justice Wecht joins this dissenting opinion.